No. 42,955

ERMA RACHEL MERRIWEATHER, *Appellant*, v. JOHN LEE MERRI-
WEATHER, *Appellee*.

(876 P. 2d 921)

Opinion filed December 8, 1962.

*Robert M. Brown*, of Topeka, argued the cause, and was on the briefs for the appellant.

*Howard A. Jones*, of Topeka, argued the cause, and *Charles L. Davis, Jr., William E. Haney, Frank M. Rice* and *Sterling S. Waggener*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: The appellant wife in this case received a divorce from appellee husband in 1955 and thereafter went to Newton to live. She was given custody of the minor child of the parties; the child was around seven years of age at the time of the present hearing. This hearing arose upon the motion of the appellee father to change the custody from the mother to the father. After a rather full hearing on the question, the trial court granted the request and gave custody to the father.

The appellant wife urges two matters upon our attention: First, she claims the trial court was guilty of error in that the decision was against the weight of evidence. And secondly, that the trial court was incensed with the appellant wife and the decision was given under passion and prejudice.

Turning first to the evidence. We find that appellant admitted that she was the mother of two illegitimate children who were sixteen and four months at the time of the hearing. Appellant on cross examination testified: She couldn't say she was and she couldn't say she wasn't living with the man who is the father of her two young children. She thought they might get married, she almost did but they didn't so he is not living there with her.

She further admitted that she lost her job at the clinic in Newton because she got into a fight with a man down near the beer joint. She finally admitted that in the fight she had struck the man with an open pocket knife, but said she didn't hurt him "bad."

The appellee father told of visiting Newton and of calling on his son. He testified that he usually found his former wife in a beer parlor and not at home.

Contrasting the appellee's home with that of appellant, the appellee has remarried. His wife stays home and cares for the house and the meals. In 1959, when the boy was starting to the first grade, appellant brought the boy to his father and left him for the entire school year. The father's new wife seems to have been especially helpful in teaching the boy his letters and getting him to understand his school work. The father helped with this also. They were getting the boy ready for the second year in school when his mother came for him and took him back to Newton.

The father is a janitor for several business firms in the city of Topeka. He carries keys for the places at which he works and is well thought of in town. He testified that he was earning all in all not far from two hundred dollars a month at the present time.

Appellee had to admit that he was considerably behind on child support payments which had been set at ten dollars per week.

From the above account of the testimony, it must appear that there is considerable evidence which might well convince the trial court that it would be to the best interest of the seven year old boy to change the custody from his mother to that of his father.

It goes almost without saying that the real problem posed here is the question of the best interest of the child involved. *Westhafer v. Westhafer,* 125 Kan. 43, 262 Pac. 555; *Janney v. Janney,* 159 Kan. 230, 154 P. 2d 131; *Lamberson v. Lamberson,* 164 Kan. 38, 187 P. 2d 366; *Decker v. Decker,* 171 Kan. 380, 233 P. 2d 527; *Hedding v. Inman,* 172 Kan. 567, 241 P. 2d 479; *Jackson v. Jackson,* 175 Kan. 418, 264 P. 2d 1087; *Jackson v. Jackson,* 181 Kan. 1, 309 P. 2d 705.

Certainly from what has been recounted above, there can be no question that the district court might well decide that it was to the best interest of this small child to be with his father and stepmother rather than with his somewhat "wayward" mother.

The claim of passion and prejudice is quite well tied up with a statement made by the trial court during the hearing. The matter seems to have arisen as follows: At the close of appellee's evidence,

it was suggested to the court that appellee's wife might be called as a witness. The court said:

"I don't know that it is necessary that I listen to any further evidence in this matter.

"The point about it is I think the motion ought to be sustained if for no other reason than to take this much off the relief rolls. There (is no doubt) but what this man took care of the boy when he was here at school—(Interrupted) And if the child can be kept off the relief rolls and this man is willing to take care of him why maybe it ought to be done. What do you have to say?"

Here it was pointed out by counsel for plaintiff that defendant had paid nothing for child support for approximately four years and that defendant should have clean hands before asking a court of equity for such relief.

"THE COURT: Not very clean hands in this case on either side."

Being well acquainted with the trial judge, we would not believe that the above statement showed any particular bias but was made more in the nature of levity.

We are convinced that appellant carries to impossible lengths the cry of passion and prejudice in saying that it was only because of the possible saving of a few dollars on welfare that the district court made the decision in this case.

Perhaps the court's remark was unfortunate since the appellant misunderstood it but actually, he might have been more severe in his judgment of the mother.

In view of what has been said above, the trial court's decision must be affirmed. It is so ordered.