No. 76,766

In the Matter of the Marriage of KIMBERLY WHIPP, *Appellee,* and CHRISTIAN WHIPP, *Appellant.*

(962 P.2d 1058)

Opinion filed July 10, 1998.

*Trish Rose,* of Reynolds, Forker, Berkley, Suter, Rose & Dower, of Hutchinson, argued the cause and was on the brief for appellant.

*Jess W. Arbuckle,* of Martindell, Swearer & Shaffer, of Hutchinson, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The issue on appeal is whether there was a material change of circumstances sufficient to justify a change in custody of the parties' minor child and whether that change was in the child's best interests. The district court concluded a change in custody

was appropriate. The Court of Appeals reversed, finding the district court had not articulated findings of fact to support its conclusion. We granted review.

## FACTS:

Christian and Kimberly Whipp were divorced on December 30, 1993. The parties were granted joint custody of their minor daughter, L.W. who was 3 years old at the time. Kim was the primary residential custodian. In addition to a good relationship with her parents, the child had a close relationship with Barbara McGowan, her great aunt, with whom L.W. lived at times and from whom L.W. lived across the street at other times.

In June 1994, without notifying Chris, Kim moved with the child to Reno, Nevada. Kim failed to comply with the requirement in K.S.A. 60-1620 that she give Chris 21 days' notice of her intent to move the child. As a result of Kim's moving, Chris filed a motion to change custody of the child based upon a material change of circumstances. On September 15, 1994, the district court found "[a] material change of circumstances occurred when [Kim] moved to Reno, Nevada, along with the parties' minor child, without giving the requisite notice to [Chris]," and granted the father's motion to change custody.

On October 19, 1995, Kim filed a motion to return custody of L.W. to her. Kim alleged a material change in circumstances since the September 15, 1994, order changing custody to Chris and requested a custody evaluation. The district court determined an independent evaluation was necessary. It was conducted by Dr. Jeff Lane, Ph.D., a licensed psychologist.

On March 28, 1996, after hearing evidence and argument of counsel, the district court stated:

"THE COURT: Okay. It is about, it is past noon. I think rather than take it under advisement, you know, for a week or however long it takes me to write an opinion, I think I am just going to make a decision between now and 3:00 o'clock. Is that bad for everybody or Trish, is that — earlier or —

"MS. ROSE: I have some hearings upstairs, Your Honor.

"THE COURT: What time?

"MS. ROSE: About four o'clock would be a better time for me.

"THE COURT: Okay. 4:00 o'clock. Is that okay for everybody?

"MR. ARBUCKLE: That's fine with me, Your Honor.

"THE COURT: It will be very brief. I am just going to announce my decision. That will give me time to read that report again and go over my notes. Okay. 4:00 o'clock.

. . . .

"THE COURT: This is a continuation of Case Number 93 D 397, In Re: Whipp, In The Matter of the Marriage of Kimberly L. Whipp and Christian D. Whipp. We heard this case this morning, and we heard from several witnesses on both sides, and I have considered the report that was submitted by Mr. Lane, I believe is his name, yes, Jeff Lane, Ph.D., and I considered that report and I considered the evidence that was submitted this morning, and I have again reviewed Judge Kumorowski's decision . . . ."

The district judge found a material change in circumstances had occurred and that the best interests of the child dictated that Kim regain custody. The district judge said:

"I have reviewed . . . the file and the testimony and report and . . . feel that [L.W.] is lucky. She is very fortunate to have all these people on her side and behind her. She has a good father. She has a good mother; and I am sure that she is going to flourish wherever we place her. But considering everything and what I have heard today, the Court finds that, that it would be in the best interests of [L.W.] to be with her mother. And I know that that hurts, Chris, and, and I, and I don't like doing that, but I feel that, that a material change in circumstances has been shown here by the, by the housing situation and of Kimberly, her job situation, and I, I feel that the report had some influence on me, wherein the child has made her decision or at least expressed her desire to live with her mother. The dad at this point will have a new child in his life, and I think Christy [Chris' present wife] is a good mother and good influence, and Mrs. McGowan has been very influential in this case, but I am going to change the custody of [L.W.]"

The district court also filed written orders on March 28, 1996, and April 19, 1996, memorializing this decision. The journal entry contained no factual findings. Chris appealed to the Court of Appeals.

## APPELLATE COURT STANDARD OF REVIEW:

The standard of review is that an appellate court should only look to evidence supporting the decision of the trial court and determine if there was an abuse of discretion. In an unpublished decision filed December 24, 1997, a divided Court of Appeals reversed the district court.

The majority of the Court of Appeals first noted that K.S.A. 60-1610(a)(2)(A) allows a change of custody where a material change

in circumstances is shown. It observed that 1 Elrod, Kansas Family Law Handbook § 13.043 (rev. ed. 1990) defined material change as one that " 'must be of a substantial and continuing nature to make the terms of the initial decree unreasonable.' "

The majority then noted that there were three reasons given by the district court for its decision to return custody of the child to Kim. First, Kim had moved from a one-bedroom apartment to a four-bedroom house which she shared with another woman. Second, Kim's work hours and pay improved in that she was off work at 5 p.m. instead of 6:30 p.m. and she had received a $1.90 per hour raise in pay. Finally, Dr. Lane's report indicated that the child, who was 4 years old at the time of the report, preferred to live with her mother.

Acknowledging that the burden to prove the need for a change in custody rests on the moving party (Kim), the majority reviewed the evidence and found that the changes in Kim's job were negligible, the move to a four-bedroom house was not a material change of circumstances, and that a 4-year-old is not capable of knowing what is in her best interests.

The majority then noted:

*"Even though there was other evidence in the record that the district court could have considered when deciding whether a material change in circumstances had occurred since the 1994 hearing,* no other factors were articulated in support of its decision. We hold that the district court abused its discretion in finding that a material change of circumstances had occurred." (Emphasis added.)

The majority stated that even though it could simply conclude that the district court erred in granting the change of custody, courts have historically "intermingled the issues of material change of circumstances and the best interests of the child." It noted that the paramount question for determination of custody as between the parents is what best serves the interests and welfare of the children. All other issues are subordinate thereto. The court must determine which parent will do a better job of rearing the children and provide a better home environment. *Simmons v. Simmons*, 223 Kan. 639, 642, 576 P.2d 589 (1978).

The majority observed:

" 'In order to insure that the interests of the children are fully protected from an adverse change of circumstances, K.S.A. 60-1610(a) vests the trial court with continuing jurisdiction to modify a custody order. Therefore, a decree awarding child custody is *res judicata* with respect to the facts existing at the time of the decree. [Citations omitted.] However, when facts and circumstances change, custody may be changed. [Citations omitted.]' " (Quoting *Simmons*, 223 Kan. at 642.)

After citing *Simmons*, the majority next turned to the factors set forth in K.S.A. 60-1610(a)(3)(B):

" '(B) In determining the issue of custody or residency of a child, the court shall consider all relevant factors, including but not limited to:
(i) The length of time that the child has been under the actual care and control of any person other than a parent and the circumstances relating thereto;
(ii) the desires of the child's parents as to custody or residency;
(iii) the desires of the child as to the child's custody or residency;
(iv) the interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests;
(v) the child's adjustment to the child's home, school and community;
(vi) the willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for a continuing relationship between the child and the other parent; and
(vii) evidence of spousal abuse.
" 'Neither parent shall be considered to have a vested interest in the custody or residency of any child as against the other parent, regardless of the age of the child, and there shall be no presumption that it is in the best interests of any infant or young child to give custody or residency to the mother.' "

Applying these factors, the majority found that the sixth factor, whether one parent is able and willing to respect and appreciate the bond between the child and the other parent, militated in favor of Chris. The majority then noted that Kim had not paid all of the court-ordered child support during the time Chris had custody. Based on these facts, the majority found that the district court abused its discretion in finding that it was in L.W.'s best interests for her mother to have custody.

The majority concluded:

"Chris argues that a stay [of the district court's order returning the child to the mother] would have avoided any disruption in [L.W.'s] life and would have preserved the status quo. We agree. Without a finding of a material change of circumstances, [L.W.] would have remained in Hutchinson and in her home state of Kansas. Regrettably, [L.W.] will now be subjected to another change."

Judge Paddock dissented. He pointed out that the majority found evidence supporting the district court that the district judge could have considered in making its ruling. Judge Paddock stated:

"There was testimony that because of the father's changed work schedule, he only saw and interacted with the child from 7 a.m. to 9 a.m.; thus, the child's primary care giver in the home was her stepmother. The natural mother's work schedule permitted her to be a primary care giver for the child. Given the fact that the custody evaluation indicated that the child considered her natural mother as her primary care giver, that factor could indeed be a material change of circumstances."

Judge Paddock then observed:

"Our standard of review of child custody determinations is abuse of discretion. *Dickison v. Dickison*, 19 Kan. App. 2d 633, 638, 874 P.2d 695 (1994). Discretion is abused when no reasonable person would take the view adopted by the trial court. *Smith v. Printup*, 262 Kan. 587, 592, 938 P.2d 1261 (1997).

"I believe that based on the evidence in this case, a reasonable person could conclude that there was a material change of circumstances."

Judge Paddock opined that the majority had disregarded the standards of appellate review, stating:

"The fact that all the evidence presented to the trial court was not articulated into its findings is not fatal to its conclusion of material changes of circumstances. '[I]n the absence of an objection first made in the trial court, omissions in findings will not support reversal because the trial court is presumed to have found the facts necessary to support its judgment.' . . . *In re Marriage of Bradley*, 258 Kan. 39, 44, 899 P.2d 471 (1995). Our function on appeal when the trial court fails to make adequate findings and conclusions is to review the record to see if it supports a presumption that the trial court found all facts necessary to support the judgment. See *United Proteins, Inc. v. Farmland Industries, Inc.*, 259 Kan. 725, Syl. ¶ 7, 915 P.2d 80 (1996). It is my opinion that the record supports the presumption."

In seeking review of the Court of Appeals' decision, Kim now argues that (1) the majority exceeded its standard of review by ignoring evidence supporting the district court's judgment; (2) the trial court did not abuse its discretion; (3) the evidence in the record supported the finding that a material change of circumstances had occurred since the last order of the trial court; (4) the evidence supports the trial court's finding the best interests of the child was served by changing custody to Kim; and (5) the majority erred in

making an independent finding it was in the best interests of the child to be placed with her father. We granted review.

## DISCUSSION:

When the custody issue lies only between the parents, the paramount consideration of the court is the welfare and best interests of the child. The trial court is in the best position to make the inquiry and determination, and in the absence of abuse of sound judicial discretion, its judgment will not be disturbed on appeal. *Moran v. Moran*, 196 Kan. 380, 386, 411 P.2d 677 (1966). See *Struble v. Struble*, 19 Kan. App. 2d 947, 879 P.2d 37 (1994) (custody order modified).

K.S.A. 60-1610(a)(2)(A) provides:

"Subject to the provisions of the uniform child custody jurisdiction act (K.S.A. 38-1301 *et seq.*, and amendments thereto), the court may change or modify any prior order of custody when a material change of circumstances is shown."

A review of Kansas cases reveals courts have been silent as to what constitutes a material change in circumstances. Rather, there has been a universal focus on what is in the best interests of the child in determining whether a change of custody is appropriate. In *Simmons*, 223 Kan. at 642, we noted:

"The paramount question for determination of custody as between the parents is·what best serves the interests and welfare of the children. All other issues are subordinate thereto. The court must determine which parent will do a better job of rearing the children and provide a better home environment. . . .

"In order to insure that the interests of the children are fully protected from an adverse change of circumstances, K.S.A. 60-1610(a) vests the trial court with continuing jurisdiction to modify a custody order. Therefore, a decree awarding child custody is res judicata with respect to the facts existing at the time of the decree. [Citation omitted]. However, when facts and circumstances change; custody may be changed. [Citation omitted]."

In *Simmons*, the court reviewed the trial court's decision to change custody from the mother to the father. The mother was awarded custody of the children upon the parties' divorce. Shortly thereafter, she moved to Texas and purchased two cosmetic studios, bought a house, and hired a live-in housekeeper/babysitter. However, she did not have much success with the staff and she

went through five housekeeper/babysitters in 8 months. Additionally, the mother's boyfriend, who had used excessive corporal punishment on the daughter, spent numerous nights with the mother. Finally, when the children visited the father, they were often unclean and starved for attention.

After observing the children's situation with the mother, the trial court noted the father had remarried and established a household. His wife was at home to care for the children, and the father had rearranged his business affairs so that he could spend more time with the children. Based on these material facts, the *Simmons* court found sufficient evidence to sustain the district court's finding of a change of circumstances and awarded custody to the father. 223 Kan. at 643.

In *Hoffman v. Hoffman*, 228 Kan. 290, 613 P.2d 1356 (1980), we again looked to the best interests of the child to determine whether a change in custody was warranted. The *Hoffman* court only implicitly addressed whether there was a material change in circumstances. We said:

"In the case now before us, both Deanna and Gregory have established new homes with new mates since the divorce was granted. Their life styles have changed. The trial court had an opportunity to observe the parents and their new spouses in the courtroom, to hear and evaluate the testimony, and to weigh the evidence. There were many things of importance which the court considered in addition to the then unmarried status of Deanna and Cooper. The evidence of drug usage and its impact upon the child, Cooper's prior felony record, attempted denial of visitation privileges, neglect of Alex's health and clothing needs, lack of discipline, leaving the child unattended, and taking him to a tavern late at night, all support the trial court's finding that the home was unfit. We find adequate substantial evidence as a basis for the trial court's order, and we find no abuse of discretion." 228 Kan. at 292.

In *Merriweather v. Merriweather*, 190 Kan. 598, 376 P.2d 921 (1962), the question of whether there was a material change in circumstances was not addressed. Instead, we stated: "It goes almost without saying that the real problem posed here is the question of the best interest of the child involved." 190 Kan. at 599.

This court did discuss what constitutes a material change of circumstances in *In re Marriage of Bradley*, 258 Kan. 39, 899 P.2d 471 (1995). There, the mother gave notice she intended to move

out of Kansas with the children. The children's father sought a change of custody, claiming the move was a material change in circumstances. The *Bradley* court noted that K.S.A. 60-1620(c) specifically provides that a change in residence of minor children may be considered a material change in circumstances and upheld the district court's determination that it was in the best interests of the children to remain in Kansas. 258 Kan. at 44-45.

Kim argues that the record contains numerous facts the district judge considered indicating a material change in circumstances:

> "At the time of the change of custody [hearing] in September of 1994, [Chris] represented to the Court that he was living with Barbara McGowan, a primary care giver to [L.W.]; attending community college classes; and working the day shift at his employment. Almost immediately after being awarded custody of his daughter, [Chris] moved from living with Ms. McGowan, dropped his courses at the community college, and returned to the night shift at his employer. Moveover, [Chris] remarried since the court's order of September, 1994 and was expecting a new child at the time of the custody hearing held in October of 1995. In addition to these material changes in circumstance, [Kim] had received a promotion at her employer resulting in a wage increase of almost $2.00 per hour and her hours were changed from having to work from 9:30 a.m. to 6:30 p.m. to a 9:00 a.m. to 5:00 p.m. job. [Kim] had also moved from a one bedroom apartment to a four bedroom house."

As in all child custody cases, a district court's decision should not be disturbed unless it has abused its discretion. *Dickison v. Dickison,* 19 Kan. App. 2d 633, 638, 874 P.2d 695 (1994). Discretion is abused when no reasonable person would take the view adopted by the trial court. *Smith v. Printup,* 262 Kan. 587, 592, 938 P.2d 1261 (1997).

Here, the majority in the Court of Appeals disregarded Chris' change to an evening shift which meant he only saw his daughter in the mornings during the week, a significant change in circumstances. Chris no longer lives with McGowan, who had a positive and significant influence on L.W. Based on these facts, we cannot say the trial court abused its discretion in changing the custody of L.W. to Kim.

The dissent below correctly points out that the trial court's failure to specifically articulate the evidence that supports its finding is not fatal. According to the dissent, " '[i]n the absence of an ob-

jection first made in the trial court, omissions in findings will not support reversal because the trial court is presumed to have found the facts necessary to support its judgment.' " (Quoting *Bradley*, 258 Kan. at 44). The dissent continues: "Our function on appeal when the trial court fails to make adequate findings and conclusions is to review the record to see if it supports a presumption that the trial court found all facts necessary to support the judgment." Here, there is material evidence which supports the conclusions of the trial court.

In addition to determining the district court abused its discretion in finding a material change of circumstances, the Court of Appeals also examined whether a change of custody was in the best interests of the child. Here, Kim argues that the Court of Appeals again ignored evidence supporting the trial court's determination that it was in L.W.'s best interests to reside with Kim. Kim points out that Dr. Lane indicated L.W. wanted to live with her mother, and that Kim had been the primary care giver except for the 18 months L.W. lived with her father after custody was changed in September 1994.

The record contains sufficient material evidence, which the majority disregarded or reweighed, supporting the district court's decision that a material change of circumstances had occurred and it was, therefore, in the child's best interests to reside with her mother. Consequently, it was error for the majority to determine that the district court abused its discretion.

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.