NOT DESIGNATED FOR PUBLICATION

No. 113,884

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

JENNIFER M. HODGES,
*Appellant*,

and

SCOTT J. HODGES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; FREDRICK WILLIAM CULLINS, judge. Opinion filed December 31, 2015. Affirmed in part and dismissed in part.

*Jennifer M. HIll*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellant.

*Curt T. Schneider*, of Schneider Law Office, of Coffeyville, for appellee.

Before ATCHESON, P.J., GARDNER, J., and BURGESS, S.J.

*Per Curiam*: In March 2015, the Montgomery County District Court held a hearing at which it dissolved the marriage of Jennifer and Scott Hodges and awarded primary residential custody of the couple's children to Scott. Jennifer appeals that decision, arguing that the district court abused its discretion by failing to properly consider the best interests of the children as required by K.S.A. 2013 Supp. 23-3203. She also argues that the court erred in granting Scott temporary custody. After reviewing the record and briefs we affirm in part and dismiss in part.

1

Jennifer and Scott were married in July 2009. The couple had two children together, one born in October 2009, the other in August 2010. During the course of the marriage, Jennifer exclusively stayed home with the two boys while Scott worked to support the family.

In May 2014, the couple fought after Jennifer told Scott that she had been offered a job in El Dorado, Kansas. Scott told Jennifer that he did not want to move and told her she would have to choose between her family and the job. The next morning, Jennifer packed her things and moved out, taking the couple's younger son with her.

Jennifer moved to Butler County and in June 2014, she filed for divorce. The Butler County District Court entered a temporary ex parte order awarding her primary residential custody of the children and it thereafter granted Scott's motion for a change of venue to Montgomery County. In July 2014, Scott filed a motion to modify the temporary order to award primary residential custody to him. The district court held a hearing on the matter and determined that a change in custody was in the best interests of the children because:  (1) Jennifer had deceived Scott into turning over custody of their older son to her; (2) Scott had devised a thorough plan regarding how he was going to care for the children; and, (3) placing the children with Scott allowed them to remain in the family home in Montgomery County. The district court otherwise found that both Scott and Jennifer were fit parents.

On March 30, 2015, the case came before the district court for the final hearing. Both Scott and Jennifer testified and each put on character witnesses. Both Scott and Jennifer testified that they had suitable housing for the children, had made preschool and daycare arrangements for the boys, had support networks in place in their respective cities, and would work with the other parent to ensure that the children were able to

maintain relationships with both parents. Additionally, both believed it was in the boys' best interests to reside with them and wanted primary residential custody. Jennifer expressed some concerns regarding Scott's care of the children during the period of time the temporary order was in place. Jennifer's concerns were largely disproved or at least refuted by Scott's testimony, his witnesses, and the guardian ad litem's (GAL) report. Scott, when asked, testified that he had no concerns regarding Jennifer's ability to parent the children.

In addition to the testimony the day of the final hearing, the district court had a report from the GAL it was able to use in reaching its decision. The report indicated that both Scott and Jennifer were fit parents. Nevertheless, the GAL made note that:

> "• The comments from the most neutral person I talked to . . . were very complimentary of Scott and unflattering about Jennifer.
> • Both parties are pretty good at pointing out faults in the other but Jennifer tends to be more critical about Scott and Scott tends to be a little more tolerant than Jennifer.
> • Scott has a distinct advantage to offer [the children] in terms of family support and stability."

After hearing all the evidence, the district court determined that Scott should have primary residential custody. The district court's discussion of the issue was brief. In full, the district judge said:

> "THE COURT:  Well, I think Mr. Hoffmeister—he puts a theme forward that the two of you need to understand:  that you are both good parents; that both [children] are lucky because they do have a mother and a father that they both can draw from. . . .
> "And it's unfortunate, but a decision has to be made in this case, and the decision has to be made by me. In situations like these, sometimes people wrongly interpret it in a winning and losing-type situation, and that's not the way it should be interpreted. It's to be

3

interpreted that the Court is doing what the Court believes is in the best interests of [the children], based on basically an amount of good evidence that supports each person. And everybody needs to understand that sometimes the decision is made by the thinnest of margins, and this is that type of case.

. . . .

"The Court's finding it would be in the best interest of [the children] for the father to have primary residential custody because of the support system that he has placed, which has shown to be readily available and working.

"And two, these appear to be kids who enjoy a rural environment. And I do know that Caney, Kansas, is a rural environment. So that's the reasons that the Court is relying upon."

Jennifer now appeals the district court's decision.

ANALYSIS

*Did the district court err when it awarded temporary primary residential custody to Scott?*

Jennifer argues that the district court erred when it awarded temporary custody of the children to Scott because the court failed to fully analyze and apply the factors contained in K.S.A. 2013 Supp. 23-3203, Kansas' version of the best interests of the child test. Scott argues that this issue is moot. In her reply brief, Jennifer contends that this issue is not moot because the district court's final order relied on determinations made in the temporary order.

Mootness is a doctrine of court policy that recognizes the court's role as arbiter of justiciable controversies—controversies with "definite and concrete issues between the parties and 'adverse legal interests that are immediate, real and amenable to conclusive relief.' [Citation omitted.]" *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). When an issue or appeal is not timely raised, so that a judgment by the court

4

"'would be ineffectual for any purpose, and it would not impact any of the parties' rights,'[citation omitted]" the case is moot and the court lacks the power to hear it. 295 Kan. at 840-41.

The temporary custody order giving Scott custody of the children was issued on August 13, 2014. The temporary order was replaced by a final order on March 30, 2015. When the final order was issued, any objections to the temporary order became moot because any judicial action to modify the temporary order after that time would have been ineffectual and would have had no impact on either Scott or Jennifer's rights. See *In re A.E.S.*, 48 Kan. App. 2d 761, 763, 298 P.3d 386 (2013). The fact that the district court's final order mirrored the temporary order and made reference to the fact that the temporary arrangement appeared to be working well does not save this claim.

Because this issue is moot, this court lacks the power to consider the merits of Jennifer's argument. This issue is dismissed.

*Did the district court err when it awarded permanent primary residential custody to Scott?*

Jennifer next argues that the district court erred when it awarded permanent primary residential custody to Scott because it failed to adequately consider the best interests of the children.

On appeal, this court reviews lower courts' custody orders for an abuse of discretion. A judicial action constitutes an abuse of discretion if the action "(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *Frazier v. Goudschaal*, 296 Kan. 730, 755, 295 P.3d 542 (2013). A judge abuses his or her discretion if he or she fails to properly consider statutory limitations or

5

legal standards when rendering his or her decision. *Graham v. Herring*, 297 Kan. 847, 855, 305 P.3d 585 (2013).

Jennifer seems to make two arguments: First, that the district court's order was unsupported by factual evidence so that it was arbitrary and unreasonable; and second, that the district court applied an erroneous legal framework. Jennifer contends that if the district court had fully considered the factual evidence that was presented at trial, it would have come to the conclusion that primary residential custody should have gone to her rather than Scott. In support of her position, Jennifer makes a number of unsupported arguments, such as the assertion that the children "were emotionally suffering from being deprived of Jennifer's companionship" and that Scott was attempting to isolate the children from her.

Contrary to Jennifer's assertions, the record contains substantial evidence supporting the district court's decision. Witnesses called for each of the parties testified in support of the respective parent, but none of the witnesses spoke ill of the other parent or questioned his or her ability to properly care for the children. Additionally, each parent spoke of the steps he or she had taken to care for the children amidst the change and of his or her willingness to facilitate contact between the other parent and the children. Finally, the GAL's report, submitted to the district court prior to the trial, affirmed both parents' bonds with the children and their ability to provide stable loving homes to them, but ultimately seemed to indicate a preference that Scott have primary residential custody. With strong evidence supporting the fitness of both Jennifer and Scott as parents, a decision in favor of either party would have been reasonable.

Jennifer's second argument is that the district court abused its discretion by "completely fail[ing] to actually consider the statutory factors of K.S.A. 23-3203." K.S.A. 2013 Supp. 23-3203 contains a list of 11 factors the legislature has suggested courts consider when making custody determinations. These factors are meant to guide courts

6

into resolving custody disputes in ways that recognize and promote the best interests of the children involved. *Cheney v. Poore*, 301 Kan. 120, 128-29, 339 P.3d 1220 (2014). The factors in K.S.A. 2013 Supp. 23-3203 provide a starting point for this analysis, but the list is not exclusive; instead, courts should consider all relevant factors.

In its decision, the district court recognized that both Jennifer and Scott loved the children and were fit parents. The testimony of various witnesses during the trial supported this conclusion. All else being equal, the district court indicated that there were two factors that set Scott apart from Jennifer: (1) during the period of time that Scott had temporary custody of the boys, he had developed a strong support system of people who helped him care for the children; and, (2) the boys had interests that would best be served by continuing to live in a rural community.

The first factor does not clearly fit into one of the K.S.A. 2013 Supp. 23-3203 categories, but is certainly relevant to Scott's ability to provide consistent, quality care to the children. In other words, it is relevant to the consideration of the best interests of the children. The second factor is similarly difficult to classify, but could fall into K.S.A. 2013 Supp. 23-3203(g), "the child's adjustment to the child's home, school and community."

Jennifer cites *Cheney* for the proposition that failure to properly address the K.S.A. 2013 Supp. 23-3203 factors is an abuse of discretion and is reversible error. This reading of *Cheney* is incorrect. In fact, in *Cheney*, our Supreme Court found that the district court fully considered the K.S.A. 2013 Supp. 23-3203 factors in rendering its decision. *Cheney* was remanded, instead, because the district court applied the wrong legal standard to another issue in the case, one that concerned the custody of two half siblings to two different parents. 301 Kan. at 130-31.

7

Support for the opposite proposition, that the failure to explicitly address the K.S.A. 2013 Supp. 23-3203 factors is not detrimental to a district court's decision, can be found in *In re Marriage of Whipp*, 265 Kan. 500, 508-09, 962 P.2d 1058 (1998). There, our Supreme Court was asked to consider whether the district court made sufficient findings that a material change in circumstances had occurred so that the issue of child custody was properly before the court. The Supreme Court concluded that when a district court fails to "specifically articulate the evidence that supports its findings," appellate courts are to independently "'review the record to see if it supports a presumption that the trial court found all facts necessary to support [its] judgment.'" 265 Kan. at 508-09.

The principle the *Marriage of Whipp* court relied on was rooted in *Celco, Inc of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 598 P.2d 188 (1979). There, the appellants complained on appeal that the district court failed to make sufficient findings of fact to support its judgment. Our Supreme Court noted that the appellants had not objected to the findings at the trial level, then concluded the appellants' argument lacked merit because: "'It is well established in Kansas that in the absence of an objection first made in the trial court omissions in findings will not be considered in the appellate court. The trial court is presumed to have found all of the facts in issue necessary to support the judgment.'[Citation omitted.]" 226 Kan. at 369. *Celco* was then applied to family law appeals in *In re Marriage of Bradley*, 258 Kan. 39, 46-50, 899 P.2d 471 (1995).

In *In re Marriage of Grippin*, 39 Kan. App. 2d 1029, 1034, 186 P.3d 852 (2008), this court applied the *Ceclo* principle to a situation in which the district court failed to explicitly address the statutory factors contained in the best interests test when it ordered a change in custody from mother to father. This court reaffirmed that it is possible to presume the facts necessary to support a change in custody, but encouraged the district court to explicitly discuss the statutory factors supporting its decision when the case was remanded on other grounds. 39 Kan. App. 2d at 1034.

Here, the district court did not conduct a detailed analysis of all the facts giving rise to its final order. The district court acknowledged that both Jennifer and Scott appeared to be good parents and that the decision was a difficult one. Nevertheless, the district court recognized that a decision had to be made, and that it should be made with the best interests of the children in mind. The district court then ordered primary residential custody to Scott and provided two reasons for the decision. Jennifer did not object to the court's determination or question the factual basis for it. As a result, this court may presume that the district court gave adequate consideration to all of the factual testimony contained in the record prior to rendering its decision. Looking to the record, as discussed above, there is an adequate factual basis to support the district court's determination.

As the district court noted here, in situations in which there are two fit parents, both of whom desire custody of their children, decisions will necessarily be reached based on narrow margins. See *In re Marriage of Larson*, No. 111,228, 2014 WL 4435943, at *5 (Kan. App. 2014) (unpublished opinion) (Noting that most factors weighed equally between the parents and finding it acceptable to use the fact that mother moved away as the tie-breaker.). What is crucial in all cases is not that the district court provide a long list of factors weighing in favor of the parent chosen as the primary residential custodian, but that the court make the decision with the best interests of the child or children in mind. *Cheney*, 301 Kan. at 128 (In custody disputes, "'the paramount consideration of the court is the welfare and best interests of the child.'"). The district court here abided by this mandate. Jennifer's assertion that the district court abused its discretion by failing to use the appropriate legal standards in reaching its decision fails.

Affirmed in part and dismissed in part.