IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,696

STATE of KANSAS, ex rel.,
SECRETARY OF DEPARTMENT
FOR CHILDREN AND FAMILIES,
J.F., Minor Child, By and Through the
Mother and Natural Guardian, E.F., and E.F.,
*Appellees*,

v.

M.R.B. JR.,
*Appellant.*

SYLLABUS BY THE COURT

1.

When an initial child custody determination lies only between the parents as parties to the cause of action, the best interests of the child are the paramount consideration for the court.

2.

Once the best interests of the child have been determined and residential custody with one parent established, the district court may modify custody and residency when a material change of circumstances is shown. The nonresidential parent carries the burden to show that such a material change has occurred.

3.

The district court is in the best position to make the necessary inquiries and determinations concerning material circumstances, custody, residency, visitation, and

1

parenting time, so its judgment will not be disturbed on appeal unless there is an abuse of judicial discretion.

4.

When an appellant challenges the sufficiency of the evidence to support a trial court's findings regarding a child's best interests, an appellate court reviews the evidence in a light most favorable to the prevailing party below.

5.

An appellate court errs when it reweighs the evidence, substitutes its evaluation for that of the trial court, or passes upon the credibility of the witnesses.

6.

The Supreme Court will not consider issues not included in the petition for review but may address a plain error not presented.

7.

When an appellate court finds abuse of discretion by the district court in child custody cases, the appropriate remedy is to remand the case for a new determination. Under these facts, even if the district court erred in concluding Mother would be financially unable to exercise parenting time out of state, it is still the role of the district court to make custody decisions.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 16, 2020. Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed July 23, 2021. Judgment of the Court of Appeals reversing the district court is reversed on the issue subject to our review. The case is remanded to the district court with directions.

*Shaye L. Downing*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Lawrence, argued the cause, and *Kelly J. Trussell*, *Emily A. Hartz*, and *Krystal L. Vokins*, of the same firm, were with her on the briefs for appellant.

*Jody M. Meyer*, of Lawrence, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

WILSON, J.:  M.R.B. Jr. (Father), a resident of Pennsylvania, moved the trial court to modify residential custody of his daughter, J.F., who currently resides in Kansas with her mother, E.F. (Mother). The district court denied Father's motion, and he appealed to the Court of Appeals. That panel concluded that the trial court abused its discretion concerning two findings of fact when it denied the motion to change residential custody. The panel then reversed the decision of the trial court, ordering primary residential custody of J.F. be changed to Father.

Mother timely petitioned for review by this court. However, her petition did not address all the panel's holdings of error. Even so, the panel's decision presents plain error by making its own factual findings after reweighing the evidence and reaching the conclusion of which parent should have residential custody. We reverse the decision of the Court of Appeals on the issue subject to our review and remand this case to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

J.F.'s parents met in July 2011 when Father was stationed at Fort Campbell, Kentucky. The relationship spanned only a few weeks before the two lost contact for a

3

while until Mother reached out to inform Father, she was pregnant. J.F. was born in 2012, by which time both parents were in different states.

In August 2012, Father filed a motion for temporary order of parenting time alongside his voluntary acknowledgement of paternity. At that hearing, the district court awarded joint legal custody to the parents, primary residency with Mother, and reasonable parenting time with Father. This allowed him to exercise his first parenting time during Labor Day weekend in 2012.

Between deployments and a military training school, Father was only able to visit J.F. about 10 times during the first five years of her life. J.F.'s primary caretakers were her maternal grandmother, Mother, and Mother's boyfriend, Joe.

During those years, J.F. and Mother moved residences a few times, all in northeast Kansas. They generally either lived with a boyfriend of Mother—like Joe—or in a place of their own. J.F. also spent significant time in her maternal grandmother's home, where she had a room of her own.

In 2017, Father moved to modify residential custody of J.F., arguing several reasons why J.F. should live with him and his family in Pennsylvania. In general, he argued that Mother did not communicate effectively with him or provide a stable environment for J.F. Father was concerned about J.F.'s well-being, partly because J.F. reported being spanked by Mother's boyfriend and because there were also some minor health concerns, like dental work.

The trial court ordered the parties to mediate, which was ultimately unsuccessful. The court then ordered a limited home study and custody evaluation and held a trial on

Father's motion to modify in November of 2017. The court ultimately denied Father's motion, specifying that it was Father's burden to show that there were substantial changes in circumstances that required a change of custody; a burden which he had not met.

According to the district court, there was not a change in circumstances or any neglect, but a breakdown in communications. The court acknowledged that Mother constantly feared Father was building a case against her while Father feared he would be shut out of J.F.'s life. It cautioned both parties that although they never had a relationship where they could build up trust in each other and each other's judgments, they needed to do so for J.F.'s sake.

In July 2018, Father moved the court for a psychologist's examination of J.F. because she reported being spanked by Mother and her boyfriend. The court appointed Danielle Rowley, a licensed master's level social worker, to examine J.F. and begin weekly therapy sessions. Meanwhile, the court entered a journal entry for parenting plan, which dictated that Mother would continue to have residential custody. Only a month after that journal entry, Father filed an emergency motion to set it aside. The district court appointed a guardian ad litem (GAL), ordered J.F. to continue therapy with Rowley, and set an evidentiary hearing for April 2019.

At that evidentiary hearing, there was extensive testimony given by Father, Mother, Joe, J.F.'s maternal grandmother, Father's wife, and Rowley. The hearing testimony covered the full gamut of J.F.'s life, including each of Mother's shifting relationships and living situations; J.F.'s ability to communicate, including her Skype or FaceTime calls with Father; J.F.'s relationship with Joe and his son; any potential spankings or abuse of J.F.; and even J.F.'s performance at school and interactions with her friends there.

Rowley detailed her extensive work with J.F. and was able to articulate several concerns from her therapy sessions with J.F. The main theme of these concerns was for J.F.'s emotional health due to the continued changes in her regular schedule and her ability to feel secure, which was largely based on Mother's relationships. At the hearing, Rowley stated:

"[S]o when you are looking at the emotional well-being of a child and how they form their basis for what relationships should look like in the future and what they are looking for as they grow, as a therapist, it concerns you as to what foundation is laying for what [J.F.] will later search for in life for relationships as well."

But Rowley's testimony and report also seemed to indicate J.F. was affected by the disharmony between her parents:

"I believe that [J.F.] is just—she is a child that is torn in two different directions. And I think she is scared to show how she feels for some reason about her desire to want to be with dad and spend time with him, or to seem excited, is my opinion."

"[J.F.] has historically been resistant to discussing things in therapy if she feels that whoever brought her is close enough to hear."

Ultimately, without making a custody recommendation, Rowley's testimony and written reports tended to paint the picture that J.F. was facing much instability living with Mother and might not face all the same instability were she to live with Father.

Throughout the proceedings, the court-appointed GAL was a full participant. The GAL read all the pleadings filed in the case, read all the reports from professionals, spoke with those professionals, met with both parents, spoke to counsel for both parents, met

6

with J.F., and even questioned each witness at the hearing. The GAL ultimately recommended to the court that Father have residential custody.

But Rowley's testimony and the GAL's recommendation did not stand alone. Mother, Joe, and J.F.'s maternal grandmother all testified that J.F. was happy and doing well. While Rowley seemed concerned that J.F.'s life in Kansas was unstructured and did not provide stability and routine, Mother's testimony indicated that J.F. was doing well with her and she believes J.F. to be emotionally stable. Mother also rebutted several of the smaller, specific details which gave rise to Rowley's concerns.

Father's motions and the testimony at the hearing—essentially everything after the original journal entry—expressed concern relating to custody and parenting time issues but did not mention support. Father did file a domestic relations affidavit and proposed child support worksheet, which are included in the record on appeal. It is not clear how financial information was presented or considered by the district court below.

*Panel's Decision*

Father's appeal of the district court's decision centered around his contention that the district court abused its discretion. As part of his argument, he specifically challenged four factual findings of the district court, alleging they were not supported by substantial competent evidence:  Mother would be financially unable to exercise parenting time out of state; J.F. does well in the mother's home, has the needs of a typical child, and has adjusted to her home, school, and community; there was no evidence of domestic abuse in Mother's home; and neither parent respects or appreciates the bond the child has with the other parent.

The panel found error with two of these district court findings: That Mother would be financially unable to exercise parenting time out of state and that J.F. does well in the mother's home. But the panel concluded that these errors in fact constituted an abuse of discretion so egregious that it warranted reversing the decision of the trial court and ordering primary residential custody of J.F. to be awarded to her father.

ANALYSIS

Mother's petition for review presents two intertwined issues: That the panel erred by finding the trial court ignored the GAL's recommendation and it again erred by reweighing the evidence, specifically with regards to the GAL's recommendations and the testimony of the therapist. We, in turn, address these as two parts of the same issue, specifically, whether the panel erred by reweighing the evidence presented to the district court to find the court had abused its discretion.

We begin our analysis with the factual finding that J.F. does well in her mother's home because that is essentially the only factual finding implicated by Mother's petition for review to this court.

Before the panel, Father challenged this fact only insomuch as the reports and testimony of child welfare experts tended to show that J.F. does *not* do well in Mother's home. He did not take issue with the finding with regards to J.F.'s adjustment to her school or community. The panel found fault with the trial court "ignoring" Rowley's testimony and the GAL's recommendations by issuing written findings of fact and conclusions of law which do not acknowledge the GAL's recommendation and only briefly mention Rowley's role.

8

The panel highlighted Rowley's considerable testimony at the hearing and her detailed written reports where she presented evidence that J.F.'s life with Mother was unstable and that it negatively affected her emotional well-being. The panel took issue with the trial court neglecting to mention this in its written findings of fact, because "'a factfinder cannot disregard undisputed evidence that is not improbable, unreasonable, or untrustworthy. Such evidence must be regarded as conclusive.'" *State, ex rel., Secretary, Department for Children and Families v. M.R.B.,* No. 122,696, 2020 WL 6106463, at *13 (Kan. App. 2020) (unpublished opinion) (quoting *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 515, 154 P.3d 494 [2007]).

In the panel's opinion, the district court erred because Mother offered no expert testimony or other qualified evidence to dispute Rowley's diagnoses, nor did she dispute the instability of J.F. changing homes and schools.

*The Court of Appeals reweighed the evidence and made its own factual findings upon which it, in turn, found the district court abused its discretion.*

*Standard of Review*

K.S.A. 2020 Supp. 23-3201 et seq. outlines and directs a trial court's discretionary determination of a child's custody, residency, and parenting time according to the child's best interests. (These matters concerning J.F. were first determined pursuant to this statute's predecessor, K.S.A. 2001 Supp. 38-1121[d].) K.S.A. 2020 Supp. 23-3203 provides a non-exhaustive list of factors for the district court to consider when determining the best interests of a child. When a custody dispute lies only between the parents, the child's welfare and best interests are the paramount consideration for the court. Neither parent has a vested interest in custody or residency of the child, and there

9

is no presumption that the mother should have custody, regardless of the age of the child. K.S.A. 2020 Supp. 23-3204.

However, once the best interests of the child have been determined and custody with one parent established, as it was for J.F. in 2012, the district court may modify custody or residency only when a material change of circumstances is shown. K.S.A. 2020 Supp. 23-3218. By filing a motion for change of custody, Father carried the burden to show that such a material change had occurred and that it was now in J.F.'s best interests that he have residency. Because the district court is in the best position to make the inquiry and determination, its judgment will not be disturbed on appeal unless there is an abuse of sound judicial discretion. *Cheney v. Poore*, 301 Kan. 120, 128, 339 P.3d 1220 (2014).There are three ways in which a district court can abuse its discretion: "(1) when no reasonable person would take the view adopted by the district court; (2) when a ruling is based on an error of law; or (3) when substantial competent evidence does not support a district court's finding of fact on which the exercise of discretion is based." 301 Kan. at 128.

The district court commits an error of fact if substantial competent evidence does not support a factual finding on which the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

> "When an appellant challenges the sufficiency of the evidence to support a trial court's findings regarding a child's best interests, this court reviews the evidence in a light most favorable to the prevailing party below to determine if the court's factual findings are supported by substantial competent evidence and whether those findings support the court's legal conclusion." *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 704, 229 P.3d 1187 (2010).

Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

*Discussion*

We first address the heavy focus the panel placed on the district court's departure from the GAL's recommendation. Mother argues that the panel adhered to a standard which does not exist: that the district court must either follow the GAL recommendation or explicitly outline why it is choosing to depart.

Mother is correct in her assertion that the panel emphasized the importance of the GAL when it stated:

> "[T]he GAL is a critical tool in child custody determinations. '[T]he need for an independent guardian ad litem is particularly compelling in custody disputes. Often, parents are pitted against one another in an intensely personal and militant clash.' Elrod, *Reforming the System to Protect Children in High Conflict Custody Cases,* 28 Wm. Mitchell L. Rev. 495, 526 (2001) (quoting *Short ex rel Oosterhous v. Short,* 730 F. Supp. 1037, 1039 [D. Colo. 1990]). Thus, given the importance of the GAL, a court runs the risk of committing an error of fact by disregarding the GAL's recommendations." *M.R.B.*, 2020 WL 6106463, at \*15.

The panel points out that the district court did not address the GAL's recommendations in its written findings of fact and conclusions of law, commenting that if the only document included in the appellate record was the trial court's written order, it would not know that a GAL had been appointed.

11

Without question, a GAL does have an important role in child custody disputes, but the panel's apparent presumption that the district court disregarded the GAL's recommendation is not supported in the record. Mother validly reminds us that the written order is *not* the only document in the appellate record and the GAL *was* a full and active participant throughout the proceedings from the time she was appointed, including during the evidentiary hearings. We can only presume the district court heard and considered the GAL's questions and her recommendations, all as set forth and included in the official record. The only conclusion we can make with assurance is that the district court did not agree with the GAL. But the court is not required to agree with the GAL.

At its heart, Mother's argument is part of the larger issue that the panel reweighed evidence—evidence which was already seen and heard by the district court—in favor of Father.

Mother presents her argument with extreme brevity, simply stating that while the trial court relied on the testimony of the parents, the panel chose to emphasize the therapist's testimony, which was an inappropriate reweighing of the evidence. We agree.

We are persuaded that the panel erred, but Mother's reference to the GAL's recommendation and Rowley's testimony misses the forest for the trees. The district court's consideration of those two pieces of evidence is a tree, so to speak. The forest is the court's overall discretion as it relates to the best interests of the child. Within the context of that discretion, the court weighs *all* the evidence, not only the GAL's recommendation and Rowley's testimony. The panel erred by failing to view all the evidence in a light most favorable to Mother as the prevailing party within the context of that discretion, and then the panel improperly reweighed that evidence.

12

The trial judge is in the best position to evaluate the testimony of the witnesses, and the appellate court will not reweigh the evidence, substitute its evaluation of it for that of the trial court's, or pass upon the credibility of the witnesses. *In re Adoption of B.C.S.*, 245 Kan. 182, 187, 777 P.2d 776 (1989).

Given all the available evidence and considering it in a light most favorable to the prevailing party—Mother—we cannot find that it was unreasonable for the district court to conclude that J.F. was well adjusted in her home. In concluding otherwise, the panel erred by improperly reweighing the evidence in favor of Father, when—according to the applicable standard of review—it should have been viewing that evidence in a light most favorable to Mother.

*Remedy*

The problem with mother's petition for review is that while she prevails on the issue that the panel reweighed the evidence concerning J.F.'s emotional health in Mother's home, she completely ignored the panel's holding that the district court abused its discretion insofar as it considered Mother's financial position. "The Supreme Court will not consider issues not raised before the Court of Appeals or issues not presented or fairly included in the petition for review, cross-petition, or conditional cross-petition. The court, however, may address a plain error not presented." Supreme Court Rule 8.03(b)(6)(C)(i) (2021 Kan. S. Ct. R. 56).

As stated in our rules, we will not address the financial issue because Mother has not included it in her petition for review. However, we do feel the need to address a plain error not presented. After the Court of Appeals found abuse of discretion on the part of

the district court, it ultimately concluded that residential custody of J.F. would go to Father. That was overreach.

When the panel found abuse of discretion by the district court, it should have remanded the case for a new determination. The panel could not have determined itself that residential custody should go to Father without also making additional findings of fact regarding a material change in circumstances and J.F.'s best interests.

Even in light of the holding that the district court erred in concluding Mother would be financially unable to exercise parenting time out of state, the panel's remedy of a custody change was inappropriate. It is still the role of the district court to make decisions concerning J.F.'s custody and the parties' parenting time. As reflected in our standard of review, the district court is inherently in the best place to make those inquiries and determinations; an appellate court reading from the cold record is not.

In 2012, the district court—by agreement of both parties—ordered residential custody with Mother. Because both parents were parties to the action, we apply the presumption that the district court considered its order to be in the best interests of the child at that time. See K.S.A. 2020 Supp. 23-2215(d) (formerly cited as K.S.A. 38-1121). The district court may modify that previous order if there has been a material change of circumstances since the original order. If so, the district court then determines where the best interests of J.F. lie after that material change. See K.S.A. 2020 Supp. 23-3218 (formerly cited as K.S.A. 60-1610). To the extent the district court's decisions are partly based on finances or anything else, the basis for all findings of fact must be supported by the record.

CONCLUSION

Judgment of the Court of Appeals reversing the district court is reversed on the issue subject to our review. The case is remanded to the district court with directions.

STANDRIDGE, J., not participating.

KATHLEEN M. LYNCH, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Lynch was appointed to hear case No. 122,696 vice Justice Standridge under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.