IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,007

JEANNA S. CHENEY and JUSTINE R. POORE,
by her Mother and Next Friend, JEANNA S. CHENEY,
*Appellant*,

v.

ZACHARY POORE,
*Appellee.*

SYLLABUS BY THE COURT

1.

K.S.A. 2013 Supp. 23-3207(b) states that in "an exceptional case, the court may order a residential arrangement in which one or more children reside with each parent and have parenting time with the other." This language contemplates a situation where the residency of multiple children from the same couple is being divided, *i.e.*, the children are the full siblings and their residency is being divided between their parents. The statute is inapplicable to a situation where the residency of half siblings is being divided.

2.

K.S.A. 2013 Supp. 23-3203(d) recognizes that one factor in determining child custody and residency is the "interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests." Accordingly, separating a child from a half sibling or stepsibling—especially a half sibling or stepsibling sharing the child's residence with a parent—is a factor that should be considered by a court in making a custody or residency determination.

1

3.

When an initial custody issue lies only between the parents, the paramount consideration of the court is the welfare and best interests of the child. The district court is in the best position to make the inquiry and determination and, in the absence of abuse of sound judicial discretion, its judgment will not be disturbed on appeal.

4.

There are three ways in which a district court can abuse its discretion: (1) when no reasonable person would take the view adopted by the district court; (2) when a ruling is based on an error of law; or (3) when substantial competent evidence does not support a district court's finding of fact on which the exercise of discretion is based.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 2, 2014. Appeal from Rawlins District Court; GLENN D. SCHIFFNER, judge. Opinion filed December 19, 2014. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Andrew J. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, argued the cause and was on the briefs for appellant.

*Charles A. Peckham*, of Brown, Creighton & Peckham, of Atwood, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Jeanna Cheney appeals the Court of Appeals' decision affirming the district court's award of residential custody of her daughter, Justine Poore, to Justine's father, Zachary Poore. Like the Court of Appeals, we conclude that the district court erred in applying K.S.A. 2013 Supp. 23-3207(b) (dividing the residency of full siblings

2

between their parents) to the residential custody determination before it. But, unlike the Court of Appeals, we cannot overlook this error. The district court's memorandum decision shows that the error led to the district court's decision to award residential custody of Justine to Zachary. Accordingly, we reverse the district court's residential custody award and remand the case back to the district court so it can make findings of fact and conclusions of law consistent with the correct legal standards.

FACTS

Jeanna does not challenge the statement of facts contained in the Court of Appeals' opinion. A review of the record on appeal confirms the statement's accuracy. Accordingly, that section of the Court of Appeals' opinion is quoted in full below.

"Jeanna and Zachary started a relationship in March 2006. At the time they began the relationship, Jeanna was pregnant with another man's child. That child, Jocelyn, was born in November 2006, and the biological father's name was not put on the birth certificate. Zachary acted as Jocelyn's father from the time she was born.

"In December 2009, Jeanna gave birth to Zachary's child, Justine. The parties resided together with both children in Colby, Kansas, and later in McDonald, Kansas, from the summer of 2006 until the end of their relationship in September 2012. During the course of the relationship, the parties contemplated separating and actually did separate several times. At one point while the parties were living together, Jeanna found a suicide note written by Zachary. He was later found in the middle of a field with his gun. Zachary testified that he did not bring any ammunition with him to the field and that he wrote the note because he wanted to scare Jeanna; he never intended to kill himself. Jeanna testified that Zachary attempted to kill himself on several occasions.

"After this incident, the parties attended counseling. Jeanna ultimately was diagnosed as bipolar and placed on a variety of medications. Jeanna's mother and brother testified that Jeanna was sad, depressed, tired, and unmotivated when on these medications. Jeanna's sister testified that Jeanna was a 'zombie' and was sad, nervous, and withdrawn when on the medications. Zachary testified that all Jeanna did when she was

3

not at work was sleep. He also said Jeanna would drink once or twice a week while on the medication. Jeanna admitted she drank at least once a week and drank excessively at least once a month, even though she was aware she should not mix alcohol with her medication.

"In September 2012, Jeanna voluntarily admitted herself to Valley Hope for detoxification and counseling for polysubstance abuse. The counselor said Jeanna chose to endure withdrawal symptoms rather than take medication to help with the detoxification process and was very motivated to recover because of her children. She said Jeanna was committed to her future and recovery when she left Valley Hope in September 2012 and appeared to have been very successful in continuing care after her discharge.

"The children stayed with Zachary in September 2012 while Jeanna was at Valley Hope. During that time, Zachary met his current fiancee Wanda McCain and began a relationship with her. Jeanna testified that while she was at Valley Hope, she called the children, one of whom said they were watching television with their 'new mommy.' Zachary, however, testified that the children said Wanda, not 'new mommy.'

"After Jeanna left Valley Hope, both children lived with Jeanna at her mother's house. In October 2012, Jeanna filed a petition to establish Zachary's paternity and a motion requesting temporary custody of Justine. The district court granted Jeanna temporary custody of both children subject to Zachary's right to reasonable parenting time. Zachary filed an answer and counterpetition requesting residential custody of Justine and a continuing relationship with Jocelyn.

"On January 4, 2013, the parties agreed to an amended temporary order, pursuant to which Jeanna had residential custody of both children and Zachary had parenting time with them.

"The trial was held on May 21, 2013. There were witnesses who testified that Jeanna and Zachary were devoted to the children, kept them safe, and made them a priority. There were also witnesses who testified to the contrary. Particularly relevant to the legal issue presented on appeal, several witnesses testified about the effect of Jeanna and Zachary's separation on Jocelyn:

4

"• Jeanna's brother testified that after Jocelyn found out Zachary was not her father, there was a rift between Jocelyn and Justine, as well as between Justine and Jeanna.

"• Jeanna's sister testified Jocelyn felt like her father did not love her and felt like an outcast because Zachary and Justine shared secrets without her.

"• Jeanna testified that Jocelyn told her Justine and Zachary were hanging out a lot and she did not feel welcomed.

"• Zachary's mother testified that Jocelyn said she was going to live with Jeanna so that Jeanna would not be lonely while Justine was living with daddy.

"• Zachary testified Jocelyn told him that she wanted to live with Jeanna so Jeanna was not so lonely. He further testified that Justine told him every weekend that she wanted to live with him because she got 'treated nicer.'

"At the close of evidence, the district judge made a finding—as requested in the petition—that Zachary was the biological father of Justine. Thereafter, Jeanna stated that the only issue remaining for the judge to decide was that of parenting time related to Justine. Jeanna specifically noted that she would object to the judge making any findings regarding Jocelyn. In response, the judge advised the parties that he would take the matter under advisement. In so doing, the judge commented, 'I think it's too bad, because I think it's in Jocelyn's best interests to remain with her sister, and obviously, [Zachary] has parenting rights to her sister. So there's no way I can keep them together, unless I have legal authority to order it.' The judge said that before Jeanna indicated that she would lodge an objection to any findings regarding Jocelyn, he was going to grant custody to Zachary when school was out during the summer and to Jeanna when school was in session with parenting time for both parties, but only if the children could be together.

"In a memorandum decision filed May 28, 2013, the district court found that Zachary was the natural biological father of Justine, that both parents dearly loved the children, and that both were fit to be awarded the joint legal custody of Justine. The decision also noted that Zachary was the only father Jocelyn had ever known but that he

5

had no standing to request parenting time with her because he was not the biological father or stepparent. The court held, however, that it could divide custody of the children in an exceptional case [see K.S.A. 2013 Supp. 23-3207(b)] and that this was an exceptional case. The court went on to state:

'That to have both [Jocelyn] and [Justine] principally reside with [Jeanna] with only [Justine] allowed to singly leave the home to exercise visitation with [Zachary] who is the only father both girls know would be less favorable and more stressful than to have [Justine] principally reside with [Zachary] and then return to [Jeanna's] home to exercise visitation with [Jeanna] and her older sister.'

"Finding it was in the best interests of Justine to do so, the court granted residential custody of Justine to Zachary." *Cheney v. Poore*, No. 110,007, 2014 WL 1796284, at *1-3 (Kan. App. 2014) (unpublished decision).

On appeal, Jeanna argued that substantial competent evidence did not support the district court's finding that this case was an "exceptional case" justifying the divided residency of Jocelyn and Justine. See K.S.A. 2013 Supp. 23-3207(b) ("In an exceptional case, the court may order a residential arrangement in which one or more children reside with each parent and have parenting time with the other."). Specifically, Jeanna contested the court's finding that having Jocelyn and Justine reside with her would create a less favorable and more stressful situation than compared to having only Jocelyn reside with her and Justine reside with Zachary.

Zachary responded by arguing that the district court's custody order did not result in the divided residency of the two girls because he was not Jocelyn's biological father and, thus, could not have been granted residential custody of both Jocelyn and Justine. Accordingly, he argued that the district court was not required to make an exceptional case finding under K.S.A. 2013 Supp. 23-3207(b) because that statute was only

6

applicable to when the residency of full siblings is being divided between the children's parents. Zachary contended that because Justine was the sole child of both him and Jeanna and only Justine's residential custody was at issue, K.S.A. 2013 Supp. 23-3207(b) should have had no bearing on the court's decision. Despite the district court's alleged error in applying the statute, Zachary argued that the district court's residency determination could still be affirmed on appeal because substantial competent evidence supported the district court's finding that awarding him residential custody of Justine was in her best interests.

Based on a prior unpublished decision in *In re Marriage of Taylor*, No. 106,143, 2012 WL 1352867 (Kan. App. 2012), the Court of Appeals agreed with Zachary that the language of K.S.A. 2013 Supp. 23-3207(b) was inapplicable to the situation here given the fact that Zachary was not Jocelyn's biological father and, thus, did not have any custodial parental rights related to her. Accordingly, the Court of Appeals concluded that the district court could only rule on the custody and residential placement of Justine, the sole child of both Jeanna and Zachary. *Cheney*, 2014 WL 1796284, at *3-4.

Despite determining that the district court erred in applying K.S.A. 2013 Supp. 23-3207(b) to this case, the Court of Appeals concluded that the district court, as evidenced by its memorandum decision, applied the correct legal standards found in K.S.A. 2013 Supp. 23-3201 and K.S.A. 2013 Supp. 23-3203 for awarding residential custody. The panel proceeded to review the evidence presented at trial and concluded that substantial competent evidence supported the district court's determination that awarding custody of Justine to Zachary was in Justine's best interests. *Cheney*, 2014 WL 1796284, at *3-4.

We granted Jeanna's petition for review to determine whether the Court of Appeals properly concluded that K.S.A. 2013 Supp. 23-3207(b) was inapplicable to the residential

custody dispute at issue in this case and whether the district court abused its discretion by awarding Zachary custody of Justine.

THE DIVIDED RESIDENCY STATUTE

Whether K.S.A. 2013 Supp. 23-3207(b) applies to this case raises an issue involving statutory interpretation—a question of law subject to unlimited review. See *State v. Frierson*, 298 Kan. 1005, 1010, 319 P.3d 515 (2014). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). An appellate court's first attempt to ascertain legislative intent is through an analysis of the language employed, giving ordinary words their ordinary meaning. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). If a statute is plain and unambiguous, an appellate court does not need to speculate further about legislative intent and, likewise, the court need not resort to canons of statutory construction or legislative history. 291 Kan. at 216.

K.S.A. 2013 Supp. 23-3207 states in pertinent part:

> "After making a determination of the legal custodial arrangements, the court shall determine the residency of the child from the following options, which arrangement the court must find to be in the best interest of the child. The parties shall submit to the court either an agreed parenting plan or, in the case of dispute, proposed parenting plans for the court's consideration. Such options are:
> (a) *Residency*. The court may order a residential arrangement in which the child resides with one or both parents on a basis consistent with the best interests of the child.
> (b) *Divided residency*. In an exceptional case, the court may order a residential arrangement in which *one or more children reside with each parent and have parenting time with the other*." (Emphasis added.)

8

The plain language of K.S.A. 2013 Supp. 23-3207(b) clearly contemplates a situation where the residency of multiple children from the same couple is being divided, *i.e.*, the children are full siblings and their residency is being divided between their parents. This understanding of the meaning of subsection (b) is reflected in *In re Marriage of Williams*, 32 Kan. App. 2d 842, 848, 90 P.3d 365 (2004), where the court construed an earlier version of K.S.A. 2013 Supp. 23-3207(b) with the same language and concluded that a "district court does not have the discretion to divide the custody of children *of the same parents* where there are no exceptional circumstances." (Emphasis added.) See also *LaGrone v. LaGrone*, 238 Kan. 630, 635, 713 P.2d 474 (1986) (Lockett, J., concurring in part, dissenting in part) ("Where there are no exceptional circumstances, the children of divorced or unwed parents, especially those children of tender years, should not be separated by awarding custody of one child to the mother and custody of the other child to the father. Family ties between children of the same parents should not be treated lightly."); see 2 Elrod & Buchele, Kansas Family Law § 12.33, p. 200 (1999) (construing earlier version of K.S.A. 2013 Supp. 23-3207[b], stating "'[s]plit' or 'divided' custody can occur when there are two or more children and each parent receives primary custody of one or more children" and stating that "[i]f the children are from different marriages and are half siblings or stepsiblings, there may not be as strong a reason to keep them together").

As mentioned above, the panel here relied on *In re Marriage of Taylor*, an unpublished Court of Appeals decision, to conclude that K.S.A. 2013 Supp. 23-3207(b) is simply inapplicable to the divided residency of half siblings. In *In re Marriage of Taylor*, the panel found that the legislature did not intend to include half siblings and stepsiblings within the scope of the divided residency statute (then K.S.A. 2010 Supp. 60-1610[a][5][B]). The Court of Appeals noted that in other statutes, the legislature had not hesitated to use the terms stepparent, stepbrother, stepsister, or half siblings when it intended to include those individuals within the scope of the statutes. *In re Marriage of*

9

*Taylor*, 2012 WL 1352867, at *2; see K.S.A. 2013 Supp. 21-5604(b) (aggravated incest statute specifically including biological, step or adoptive relatives, and half siblings); K.S.A. 2013 Supp. 21-5926(e) (Medicaid fraud statute defining family member to include biological, step or adoptive relatives, and half siblings); K.S.A. 2013 Supp. 23-3301 (allowing stepparents and grandparents to be granted visitation rights of minor child in divorce cases); K.S.A. 2013 Supp. 44-508(c)(2) (Workers Compensation Act statute defining members of a family to include stepparents, stepchildren, and stepsiblings); K.S.A. 2013 Supp. 72-1046b(a)(3) (school transportation statute defining member of family to include half siblings and stepsiblings).

Notwithstanding its legal conclusion that K.S.A. 2010 Supp. 60-1610(a)(5)(B) does not require district courts to make findings of exceptional circumstances before dividing the residency of half siblings or stepsiblings, the *Taylor* panel held that separating a child from a half sibling or stepsibling is still a factor that should be considered in a custody or residency determination, keeping in mind that the most important factor is the best interests of the child. See *In re Marriage of Taylor*, 2012 WL 1352867, at *2. In support of this holding, the panel noted that K.S.A. 2010 Supp. 60-1610(a)(3)(B)(iv) (now K.S.A. 2013 Supp. 23-3203[d]) recognizes that one factor in determining child custody and residency is the "'interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests.'" *In re Marriage of Taylor*, 2012 WL 1352867, at *2. The Court of Appeals noted that half siblings and stepsiblings—especially those residing with the child and a parent—may have a significant impact on the child's life. Thus, if such a relationship exists, it must be taken into consideration by the court in determining the child's residency, even though the most important factor to consider is the best interests of the child. *In re Marriage of Taylor*, 2012 WL 1352867, at *2.

10

The analysis set forth in *In re Marriage of Taylor* regarding the prior version of K.S.A. 2013 Supp. 23-3207(b) is sound. We adopt its reasoning in concluding that the statute does not require a district court to make an exceptional case finding before rendering a decision that will result in dividing the residential custody of half siblings. Consequently, we agree with the Court of Appeals that the statute was simply inapplicable in determining the residential custody of Justine.

ABUSE OF DISCRETION

Jeanna argues that the Court of Appeals, despite concluding that the district court erred in applying K.S.A. 2013 Supp. 23-3207(b), went astray when it affirmed the district court's decision to award Zachary residential custody of Justine. Jeanna contends that the district court's decision was based solely on its incorrect belief that the case was an "exceptional case" under K.S.A. 2013 Supp. 23-3207(b), which compelled the district court to award residential custody to Zachary.

In *Harrison v. Tauheed*, 292 Kan. 663, Syl. ¶ 1, 256 P.3d 851 (2011), this court stated:

> "When an initial custody issue lies only between the parents, the paramount consideration of the court is the welfare and best interests of the child. The district court is in the best position to make the inquiry and determination, and, in the absence of abuse of sound judicial discretion, its judgment will not be disturbed on appeal."

We have stated that there are three ways in which a district court can abuse its discretion: (1) when no reasonable person would take the view adopted by the district court; (2) when a ruling is based on an error of law; or (3) when substantial competent evidence does not support a district court's finding of fact on which the exercise of

11

discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012); see also *Frazier v. Goudschaal*, 296 Kan. 730, 755, 295 P.3d 542 (2013) (noting that *Ward*'s abuse of discretion standard applies to appellate review of district court's order regarding custody and parenting time).

Various provisions of K.S.A. 2013 Supp. 23-3201 *et seq.* guide a district court's discretionary determination of a child's custody, residency, visitation, or parenting time. When a district court is called upon to determine the custody or residency of a child, K.S.A. 2013 Supp. 23-3201 requires the decision be made "in accordance with the best interests of the child." See also *In re Marriage of Whipp*, 265 Kan. 500, Syl. ¶ 1, 962 P.2d 1058 (1998) ("The paramount question for determining custody as between the parents is what best serves the interests and welfare of the children. All other issues are subordinate thereto. The district court must determine which parent will do a better job of rearing the children and provide a better home environment."). To aid in making that decision, K.S.A. 2013 Supp. 23-3203 instructs that a "court shall consider all relevant factors, including, but not limited to:

"(a) The length of time that the child has been under the actual care and control of any person other than a parent and the circumstances relating thereto;

"(b) the desires of the child's parents as to custody or residency;

"(c) the desires of the child as to the child's custody or residency;

"(d) the interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests;

"(e) the child's adjustment to the child's home, school and community;

"(f) the willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for a continuing relationship between the child and the other parent;

"(g) evidence of spousal abuse;

12

"(h) whether a parent is subject to the registration requirements of the Kansas offender registration act, K.S.A. 22-4901 *et seq*., and amendments thereto, or any similar act in any other state, or under military or federal law;

"(i) whether a parent has been convicted of abuse of a child, K.S.A. 21-3609, prior to its repeal, or K.S.A. 2013 Supp. 21-5602, and amendments thereto;

"(j) whether a parent is residing with an individual who is subject to registration requirements of the Kansas offender registration act, K.S.A. 22-4901 *et seq*., and amendments thereto, or any similar act in any other state, or under military or federal law; and

"(k) whether a parent is residing with an individual who has been convicted of abuse of a child, K.S.A. 21-3609, prior to its repeal, or K.S.A. 2013 Supp. 21-5602, and amendments thereto."

The district court's memorandum decision shows that after the court found that both Zachary and Jeanna were fit parents and awarded them joint legal custody of Justine, the court proceeded to determine the issue of residential custody. In doing so, the court acknowledged that under K.S.A. 2013 Supp. 23-3201, residency is to be determined in accordance with the best interests of the child and proceeded to quote in full all the factors listed in K.S.A. 2013 Supp. 23-3203 as considerations in making this determination. Notably, the court also quoted in full K.S.A. 2013 Supp. 23-3207, which describes the various residential custody arrangements that a court can establish. As noted above, K.S.A. 2013 Supp. 23-3207(b) states that in exceptional cases, the residency of two or more full siblings may be divided between their parents.

After finding that Zachary was Justine's natural father and that he did not have standing to request parenting time with Jocelyn, the district court made the following findings:

13

"19. That although the Court recognizes and agrees that only in an exceptional case should the custody of minor children be divided, the Court finds this to be an exceptional case.

"20. That to have both Jocelyn Cheney and Justine Poore principally reside with [Jeanna] with only Justine Poore allowed to singly leave the home to exercise visitation with [Zachary] who is the only father both girls know would be less favorable and more stressful than to have Justine Poore principally reside with [Zachary] and then return to [Jeanna's] home to exercise visitation with [Jeanna] and her older sister.

"21. The Court therefore finds that it is in the best interests of Justine Poore to grant her residential custody to [Zachary]."

Paragraph 19 of the memorandum decision clearly shows that the district court mistakenly believed that K.S.A. 2013 Supp. 23-3207(b) applied to this case—a residential custody dispute involving only one child with an older half sibling. Based on the district court's misunderstanding of the statute, the court declared this case to be an "exceptional case" and then proceeded to make findings in paragraph 20 to support its exceptional-case conclusion. The district court then relied on these findings to conclude in paragraph 21 that it was in the best interests of Justine to reside with Zachary.

It is apparent from the district court's memorandum decision that it applied the wrong legal standard (K.S.A. 2013 Supp. 23-3207[b]) to determine the issue before it and that this mistake shaped its analysis of the facts which, in turn, led to its best interests determination. Admittedly, earlier in the memorandum decision, the district court quoted the correct legal standards (K.S.A. 2013 Supp. 23-3201 and K.S.A. 2013 Supp. 23-3203) for determining residential custody in this case. But, unlike the Court of Appeals, we cannot divine from the memorandum decision that the district court actually applied these standards to the issue before it or would have reached the same result if it had.

14

What is clear from the memorandum decision is that the district court abused its discretion by basing its decision to award residential custody of Justine to Zachary on a misapplication of K.S.A. 2013 Supp. 23-3207(b) (*i.e.*, the court's ruling resulted from an error of law). Accordingly, we reverse the Court of Appeals' decision affirming the district court and remand the case back to the district court so it can make findings of fact and conclusions of law consistent with the correct legal standards found in K.S.A. 2013 Supp. 23-3201 and K.S.A. 2013 Supp. 23-3203.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 110,007 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.