NOT DESIGNATED FOR PUBLICATION

No. 123,507

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of:

RANDALL J. MCNUTT,
*Appellant*,

and

SAMANTHA S. GATES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Geary District Court; COURTNEY D. BOEHM, judge. Opinion filed September 17, 2021. Affirmed.

*V. Linnea Alt*, of Law Office of V. Linnea Alt, Chartered, of Junction City, for appellant.

*Gabriela A. Vega*, of Addair Thurston, Chtd., of Manhattan, for appellee.

Before MALONE, P.J., WARNER and HURST, JJ.

PER CURIAM: Randall J. McNutt (Father) appeals the district court's decision to grant Samantha Gates' (Mother's) motion for residential placement of the parties' twin daughters. Father argues that the trial court erred in finding that his move to Alaska constituted a material change in circumstances permitting evaluation and modification of the parenting plan. Father also argues that the trial court improperly relied on outdated allegations and evidence in its residential placement decision. The district court is affirmed.

1

PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

Mother and Father met in late 2008 when Mother was 17 and Father was 24 years old. Mother became pregnant and Mother and Father married in February 2009. Mother gave birth to twin daughters in July 2009 (the Children). Father is a member of the United States Army, requiring him to relocate for work from time to time. Father and Mother lived in Georgia for Father's work, and Father eventually filed for divorce. The Georgia court granted the divorce and Mother and Father entered into an agreed co-parenting plan in September 2012.

From approximately May 2013 until March 2015, Father prevented Mother from exercising parenting time under the agreed co-parenting plan. Mother and Father went to court several times between March 2015 and October 2016 to establish and enforce Mother's parenting time. In October 2016, the Georgia court created a parenting plan giving Mother and Father joint legal custody, Father residential custody, establishing Mother's parenting time, and designating Father as the tie-breaker for disagreements (the 2016 Parenting Plan Order).

In January 2016, Father relocated with the Children to Junction City, Kansas and later registered the 2016 Parenting Plan Order in Kansas. From approximately October 2016 until the current proceedings began, Father did not prevent Mother's minimum parenting time. In January 2019, Father moved the district court to order that the Children remain at Father's residence with stepmother during Father's extended deployment. Mother opposed this request and moved that the Children reside with her in Illinois during Father's deployment. The Kansas district court ruled the Children to remain at Father's residence with their stepmother during Father's deployment. During Father's deployment, which lasted from approximately February 2019 until June 2019, the Children remained with stepmother, and Mother and stepmother had multiple conflicts.

In May 2019, while Father was deployed, Mother exercised parenting time in Junction City, Kansas for Mother's Day for the first time since Mother's Day of 2013. During Mother's parenting time, an incident occurred with one of the Children at the hotel pool that Mother wanted to discuss with stepmother. Mother also wanted to speak directly with Father regarding the incident. After taking the Children to school on Monday morning, Mother went to Father's residence to speak to stepmother and see if stepmother could contact Father. The stepmother refused to answer the door, and texted Mother - stating that anything Mother needed discussed could be texted. Mother and stepmother also disagreed about stepmother's plans to take the Children to Maine to visit stepmother's family. Mother moved the district court to restrict stepmother's travel plans, which was denied. Stepmother refused to provide Mother with all the addresses where the Children would be staying in Maine. Mother received all telephone time required in the 2016 Parenting Plan Order during the Maine trip.

The district court appointed Dr. Columbus Bryant as a custody evaluator (the Evaluator). In October 2019, Father notified the district court and Mother of his intent to relocate with the Children to Alaska. Father moved the Children to Alaska and in December 2019, Mother moved the district court to return the children to Kansas and award Mother residential placement. In April 2020, Mother amended her motion and asked the district court to modify custody, residential placement, parenting time, and award her sole legal custody. Father opposed Mother's motion, seeking to maintain the existing custody plan and the Children's residential placement.

Mother and Father tried their case in August 2020, each appearing with counsel and presenting witnesses. The Evaluator submitted reports to the district court containing his observations of Mother and Father and recommended residential placement of the Children with Mother. In August 2020, the district court issued its Final Order Regarding Child Custody, Residential Placement, and Parenting (Final Custody Order) and awarded joint legal custody to both parents, with primary residential placement with Mother.

Father filed a motion to reconsider which the district court denied, and Father filed this appeal. In March 2021, Mother filed a motion for attorney fees and costs under Supreme Court Rule 5.01 (2021 Kan. S. Ct. R. 31) and Rule 7.07(b), (c). (2021 Kan. S. Ct. R. 52.)

## DISCUSSION

This court reviews the district court's modification of a custody order, including residential custody, for an abuse of discretion. See *In re Marriage of Rayman*, 273 Kan. 996, 1001, 47 P.3d 413 (2002). The district court abuses its discretion in a child custody case

> "(1) when no reasonable person would take the view adopted by the district court; (2) when a ruling is based on an error of law; or (3) when substantial competent evidence does not support a district court's finding of fact on which the exercise of discretion is based." *Cheney v. Poore*, 301 Kan. 120, 128, 339 P.3d 1220 (2014).

A court may modify an existing custody, residency, child support, or parenting time order anytime when the court finds a "material change of circumstances." See K.S.A. 2020 Supp. 23-3222(c). Once the court determines a material change exists, the district court will consider the bests interests of the child in modifying custody, residence, visitation, or parenting time. See *Cheney*, 301 Kan. at 128-29; K.S.A. 2020 Supp. 23-3203. "'When the custody issue lies only between the parents, the paramount consideration of the court is the welfare and best interests of the child.'" *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011). Because the trial court reviews all the facts and hears all the testimony, it "is in the best position to make the inquiry and determination" regarding the best interests of the child. 292 Kan. 663, Syl. ¶ 1. This court will only disturb the district court's decision when it finds an abuse of that court's sound discretion. 292 Kan. at 672.

4

I.      *Father's Relocation to Alaska is a Material Change*

Father argues that moving to Alaska from Kansas, when Mother already lived in a different state from him, was not a material change of circumstances permitting the court to modify the existing residential custody placement. Father's primary argument is that Mother already exercised distance parenting time from Illinois and his move to Alaska would allow Mother to have the same holiday and parenting time. Father's argument is illogical and unsupported by existing caselaw. A change of residence of one parent, depending on the circumstances, could constitute a "material change of circumstances" justifying modification of a custody or residency order. See, e.g., K.S.A. 2020 Supp. 23-3222(c). Additionally, a panel of this court reviewed a similar issue and permitted modification of a custody order when a parent residing outside Kansas relocated to another state. See *In re Marriage of Shockman and Stockman*, No. 121,818, 2020 WL 1814470, at *3. (Kan. App. 2020) (unpublished opinion).

In *In re Shockman*, shortly after the divorce the mother moved to Oregon with the child and later moved to Alaska. The father, who was still residing in Kansas, sought to modify the custody agreement arguing mother's move from Oregon to Alaska constituted a material change. The district court found a material change in circumstance existed and issued a new custody order reducing child support, setting residential custody with the mother, and outlining the father's visitation schedule. On appeal, a panel of this court analyzed the district court's new order for an abuse of discretion. 2020 WL 1814470, at *2. The panel did not review whether the mother's move from Oregon to Alaska constituted a material change in circumstance permitting the order. Neither the parties nor the panel disputed that the mother's move constituted a material change.

The district court may consider any factors it deems appropriate when determining whether a parent's change in residence creates a "material change in circumstance." See K.S.A. 2020 Supp. 23-3222(c). Among those factors, the court should also consider how

the move impacts the best interests of the child, how the move impacts the rights of the other parent, and any increased costs on the nonmoving parent. See K.S.A. 2020 Supp. 23-3222(c). While it is true that Mother does not live in Kansas—that does not presuppose that any move by Father is immaterial. A material change in circumstance is one "of a substantial and continuing nature to make the terms of the initial decree unreasonable." *In re Marriage of Whipp*, 265 Kan. 500, Syl. ¶ 3, 962 P.2d 1058 (1998).

Father's move more than 3,000 miles from Kansas to Alaska is substantial—not merely because of the distance from his original residence, but because of the increase in distance from Mother. Before Father's move to Alaska, Mother lived in Illinois where she remains. While not an ideal co-parenting arrangement, the distance between Illinois and Kansas allowed Mother to drive to Father's residence within a day. Mother or the Children could also fly direct in less than two hours between Chicago, Illinois and Topeka, Kansas or Kansas City, Missouri. The drive from Father's Kansas residence to either airport was about one or two hours, depending on the airport.

Mother would have to drive for almost a week straight to reach Father's new residence in Alaska. Alternatively, Mother would have to fly between 7 to 12 hours from Chicago, likely with one or two connecting flights. Father stated that he did not believe it was safe for the Children to fly alone from Alaska to Chicago—requiring Mother to either only visit the Children in Alaska or fly to Alaska and fly with them back to Chicago and do the same when returning them. Conversely, the direct flights from Topeka, Kansas to Chicago were less than two hours—likely a flight the Children could make on their own. Father's move substantially increased Mother's travel time and expense to see the Children.

Father's move also increased the likelihood that the Children would be unable to spend time at Mother's residence or that Mother would miss parenting time. The increased travel time and expense could cause Mother to stay in Alaska for her visits,

6

something suggested by Father, which would decrease the time the Children are at Mother's residence. Such an arrangement would decrease the Children's time with their extended family because Mother's family is in Illinois. Father's move also increased the likelihood of Mother missing parenting time due to the heightened possibility that inclement weather could prevent travel altogether.

Father intends to stay in Alaska until at least 2023, making the move continuing in nature. Father's move increased the travel time and expense for Mother, increased the likelihood of Mother missing parenting time, increased the likelihood of the Children missing time with their extended family, and increased the travel burden on the Children. The district court did not abuse its discretion in finding Father's move from Kansas to Alaska constituted a material change in circumstances permitting the court to evaluate the custody order.

Because the district court correctly found Father's move was a material change in circumstance, this court need not determine whether the prolonged gaps in Mother's parenting time also constituted a material change in circumstance.

II.      *The District Court Did Not Err in Determining Residential Placement with Mother Was in the Best Interests of the Children*

Father argues that the district court erroneously considered evidence from before the 2016 Parenting Plan Order to determine the Children's residential placement. Father failed to cite any relevant caselaw for his proposition. Father contends that the Kansas district court cannot consider any pre-2016 evidence because the Georgia court previously considered it to create the 2016 Parenting Plan Order. Father's argument lacks merit and legal support. See *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 14-15, 61 P.3d 68 (2002) ("Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing

7

to brief an issue."). Additionally, the district court did not solely rely on pre-2016 evidence.

Father alleges that the district court's following findings stemmed from pre-2016 evidence already considered by the Georgia court:

1. Father alienated Mother;
2. Father made decisions for the minor children over Mother's objection;
3. Father was unwilling to share information and collaborate with Mother;
4. Father made allegations against Mother of a criminal nature;
5. Father was unwilling to communicate with Mother; and
6. Stepmother refused to communicate with Mother and was attempting to take over Mother's role.

Father's factual contentions are inaccurate because several of the district court's findings, including numbers one, three, four, five, and six above, are supported by post-2016 evidence. Father's behavior regarding findings numbered one, two, three, and five was far worse before the 2016 Parenting Plan Order—but his improvement in these areas does not mean the objectionable behavior stopped entirely.

All the evidence relating to stepmother occurred after 2017. Father admits that the Children first met stepmother in 2017 and that she moved into Father's residence in 2018. The district court specifically cited concerns about Father's proposal to stepmother which occurred after the 2016 Parenting Plan Order, and the Children were present. The district court also cited concerns with stepmother's 2019 interactions with Mother. All evidence and associated findings related to stepmother, including Father's proposal where he asked stepmother to be the Children's mother, occurred post-2016.

The court's findings that Father alienated the children from Mother and was unwilling to communicate or collaborate with Mother were all supported by 2017-2019

8

evidence presented at trial. For example, the district court heard evidence about Father's failure to respond to Mother's texts regarding parenting time, including in the spring of 2017, and Father's reluctance or refusal to permit the Children to call Mother on their own or answer Mother's calls in 2018. The district court's finding regarding Father's criminal allegations were supported by post-2016 evidence because Father testified at trial that he was currently concerned with Mother's alleged use of marijuana. While it is true that after the 2016 Parenting Plan Order Father ceased preventing Mother from exercising parenting time—Father's reluctant acquiescence to Mother's minimum parenting time does not mean he stopped undermining and impeding Mother's relationship with the Children.

The district court reviewed extensive briefing and held an evidentiary hearing on August 3 and 11, 2020, where Mother and Father were both represented by counsel and presented evidence. The evidence also included the Evaluator's reports and testimony. The Evaluator interviewed the parties, conducted psychological evaluations, and provided reports and an opinion that the Children's best interests were served by living with Mother in Illinois, rather than moving with Father to Alaska. After evaluating all the evidence, the district court determined that Father's move from Kansas to Alaska constituted a "material change of circumstance" permitting a modification, and that a modification of the 2016 parenting plan was in the Children's best interests.

The district court is in the best position to determine the custody and residency of the Children. See, e.g., *Tauheed*, 292 Kan. 663, Syl. ¶ 1. In deciding custody and residential placement, the district court "shall consider all relevant factors" in determining the best interests of the child. K.S.A. 2020 Supp. 23-3203; see also *Cheney*, 301 Kan. at 128-29. This court determines whether the district court abused its discretion by acting arbitrarily, applying the law incorrectly, or basing its decision on erroneous facts. The district court clearly applied the correct law, explaining that it "looked at the relevant factors contained within K.S.A. 23-3203" to determine the Children's best interests. The

district court did not act arbitrarily or unreasonably, and identified several factors that supported residential placement with Mother, explaining:

> "Throughout his children's lives Father has acted like his rights, positions and therefore decisions were superior to that of Mother. . . . Due to his behavior, the Court believes that Father will continue to hinder Mother's access to her Children going forward. . . . It does not appear to the Court that Father is approaching co-parenting with the spirit of cooperation and collaboration."

Furthermore, the district court's decision is consistent with the Evaluator's opinion—demonstrating that a reasonable person could agree. See *Cheney*, 301 Kan. at 128 (an abuse of discretion can be shown when no reasonable person would agree with the district court).

Although not entirely clear, Father apparently alleges the district court relied on erroneous or mistaken facts in its decision. A district court can abuse its discretion "when substantial competent evidence does not support a district court's finding of fact on which the exercise of discretion is based." See *Cheney*, 301 Kan. at 128. Father's primary argument, as explained above, is that the district court wrongly relied on evidence from before the 2016 Parenting Plan Order. Father does not provide any citation for his argument, and this court finds it unpersuasive. In custody proceedings, the district court must determine the best interests of the Children and that necessarily requires evaluating the totality of the circumstances. Even if the district court erred in relying on *some* evidence from before the 2016 Parenting Plan Order, such error was harmless because the district court relied on substantial post-2016 evidence supporting its findings. See, e.g., *City of Mission Hills v. Sexton*, 284 Kan. 414, 434, 160 P.3d 812 (2007) ("If the error does not prejudice the substantial rights of a party, the error is harmless, must be disregarded, and does not afford a basis for reversal of a judgment."); see also K.S.A 2020 Supp. 60-261 (error in admission of evidence is harmless unless it affects substantial rights).

10

The district court did not abuse its discretion.

III.     *Mother is Not Entitled to Attorney Fees*

Mother seeks appellate attorney fees and costs alleging Father's appeal was frivolous and failed to demonstrate an abuse of discretion. This court may award attorney fees if it finds "that an appeal has been taken frivolously, or only for the purpose of harassment or delay." Rule 7.07(c). A frivolous appeal is one where "no justiciable question has been presented" and is without merit. See *Blank v. Chawla*, 234 Kan. 975, 982, 678 P.2d 162 (1984). Father's appeal does not meet this standard.

Although this court disagrees with Father's claims, it cannot be said the appeal was frivolous or taken for the purpose of harassment. A residential parent's relocation does not always constitute a material change in circumstances. See, e.g., K.S.A. 2020 Supp. 23-3222(c) (explaining that change of a child's residence might constitute a material change in circumstance in some cases); *In re Marriage of Shockman*, 2020 WL 1814470, at *2-3 (analyzing material change of circumstance when residential parent moved from Oregon to Alaska); *In re Marriage of Novacek*, No. 118, 628, 2018 WL 3320195, at *9 (Kan. App. 2018) (unpublished opinion) (finding that both parents lived outside Kansas and the mother's move to Kansas did not constitute a material change because it would only result in a "shorter drive"). Thus, Father presented a justiciable question and his appeal was not frivolous.

CONCLUSION

The district court did not abuse its discretion in finding that Father's move from Kansas to Alaska constituted a material change in circumstances permitting the court to modify the existing custody order. Additionally, when determining the best interests of the Children regarding residential placement, the court did not err in relying on evidence

11

that predated the 2016 Parenting Plan Order. Finally, any error was harmless because the court also relied on post-2016 evidence.

The district court's final custody order is affirmed. Mother's motion for attorney fees and costs is denied.

Affirmed.