NOT DESIGNATED FOR PUBLICATION

No. 128,075

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
S.L.W.,
*Appellant*,

and

S.M.W., n/k/a S.M.T.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Decatur District Court; PRESTON A. PRATT, judge. Submitted without oral argument. Opinion filed February 21, 2025. Affirmed.

*Todd R. Stramel*, of Stramel Law Firm, P.A., of Colby, for appellant.

*Zachary S. Peterson*, of Walter, Walter & Peterson, of Norton, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS and PICKERING, JJ.

PER CURIAM: S.L.W. (Father) appeals the district court's grant of primary residential custody of his minor child (S.W.) to S.M.W. (Mother). Father argues that the district court abused its discretion when it awarded custody of S.W. to Mother without finding fault or deficiency in Father's parenting. Father also alleges that by awarding custody to Mother based solely on the wishes of S.W., the district court's ruling was both unreasonable and an error of law. He requests that this court reverse the district court's ruling and allow Father to retain residential custody of S.W. Because the district court did

1

not abuse its discretion when it awarded Mother primary residential custody of S.W., we affirm.

FACTUAL AND PROCEDURAL HISTORY

S.W. was born in Hawaii in September 2009 as the only child to Father and Mother. The marriage failed shortly thereafter, and in July 2010 the Hawaii court issued a divorce decree. For the next four years, S.W. lived alternately with Father, Mother, or both, each living situation lasting for roughly a year or less.

In Fall 2014, Father filed a petition under K.S.A. 23-37,201 et seq. requesting that Kansas assume jurisdiction of S.W. for the purpose of custody, visitation, and support. In January 2015, the Decatur County District Court considered Father's petition and determined that it had jurisdiction and venue to modify the child-custody determination of S.W. The parties developed a parenting plan that the district court adopted in March 2015.

The new parenting plan noted that "[b]oth parents are fit and proper persons to have joint responsibility for the care of the minor Child" and awarded joint custody, with Father being the primary residential parent. Under the plan, Mother had a normal joint custody arrangement, having S.W. during every summer break, Easter break and Christmas break of even years, and spring break and Thanksgiving break of odd years. This voluntary parenting plan lasted for about eight and a half years before Mother filed the current action.

In August 2023, Mother filed a motion to modify custody and parenting time, requesting that the district court award her residential custody of S.W. By this time, S.W. was a month shy of 14 years old. The motion argued that given S.W.'s age, it would be in her best interests to reside with Mother in Ohio while still allowing Father to maintain

"reasonable parenting time." Under Mother's proposed parenting plan, Father would have custody of S.W. under the same arrangement that she had S.W. when Father was the residential custodian. Father and S.W. resided in Kansas, Mother in Ohio, during all times relevant to this action.

Father responded to Mother's motion, claiming that the best interests of S.W. would be served by denying the motion, and that child support should be established under the Kansas Child Support Guidelines.

By the time of the hearing on Mother's motion, in May 2024, S.W. was almost 15 years old. Six witnesses testified: (1) the pastor of Mother's church in Ohio; (2) S.W.'s step-aunt in Ohio; (3) Mother; (4) S.W.'s eighth grade math teacher in Kansas; (5) S.W.'s middle school social studies teacher in Kansas; and (6) Father.

Summarized, the witnesses testified that S.W. was a thoughtful, well-adjusted, and pleasant child. She does well in school and her teachers described her as a good student with a happy demeanor. That said, she is on an IEP (Individual Education Plan) due to learning disabilities and speech impairments. Other than Mother, no one expressed any concerns about Father or his parenting style. And other than Father, no one expressed concern about Mother's parenting style.

Mother testified that she was a stay-at-home mother. As a stay-at-home mom, Mother claimed that she could take a hands-on approach with S.W. and push her to her full potential, while Father only began putting in more effort to parent S.W. after Mother took him to court. She revealed that they did not co-parent well due to poor communication and that Father had repeatedly asked Mother to sign over her parental rights because he claimed S.W. did not need her as a mother anymore. Mother stated that S.W. enjoyed family time and that a network of extended family would be close by their home in Ohio. She also stated that S.W. had been asking since she was 10 years old to

3

live with Mother because she was "lonely" and "left home alone a lot" with Father. Mother believed that now that S.W. was 14, she was mature enough to decide for herself where she should live.

Father testified that Mother had not always exercised the parenting time that she was granted in the 2015 agreement due to her military service and an inconsistent living situation. He also disputed Mother's claim that he was noncommunicative and argued that he routinely provided necessary information about S.W.'s schooling. Father asserted that remaining in her current school would be good for S.W. because her familiarity with the faculty would encourage her to ask for help if she needed it. He described S.W.'s schedule, what their days were like at home, and stated that she had a good relationship with both him and her younger half-brother.

The district judge spoke with S.W. alone after both Mother and Father agreed that a one-on-one conversation without the presence of parents or attorneys would be best. During that exchange, S.W. told the district judge that she and Father got along "okay I guess, but not really. Like sometimes, we have a—we have a lot of arguments a lot." S.W. also said that she had voiced concerns to Father about the way he treats her, and Father told S.W. that she was making it up and her concerns were not true. She claimed that Father treated her half-brother better and that Father had repeatedly called her selfish for not babysitting her brother or doing his chores for him. According to S.W., Mother respected her more as a person and the environment at Mother's house was "a lot better" than at Father's house. She also stated that she was lonely at Father's house because he was gone from home frequently, either with friends or working.

S.W. expressed a desire to live at Mother's house and told the district court that she had communicated that desire to both Mother and Father many times. Whereas Father told S.W. that she was too young to make that decision for herself, Mother told S.W. that she could live with Mother if it was what S.W. really wanted. S.W. also stated that

4

although she would spend some school breaks with Father, she wanted to stay with Mother in Ohio for the upcoming summer break because she felt that Father "would be very upset with my decision of wanting to live in her home. I feel like I would get in trouble a lot more, so I—I don't really want to get yelled at for choosing the decision for wanting to live with my mom."

At the conclusion of the hearing, the district court found that because the previous parenting agreement was originally an agreement between the parties and not ordered by the court, a material change in circumstance need not be established to alter the parenting plan. Thus, the district court ruled that Mother, as the party seeking the change in custody, only needed to establish that a change in residential custody was in S.W.'s best interests. The parties do not challenge that finding. The district court concluded that Mother had met this burden. It ordered the parties to adopt the parenting plan proposed by Mother except that S.W. would live with Mother for the summer break after the hearing to get acclimated to her new living situation in Ohio.

Father timely appeals.

ANALYSIS

Father contends that the district court abused its discretion by changing the parties' residential custody agreement and placing S.W. in the primary custody of Mother. Because the district court did not make any adverse findings regarding Father's care of S.W., he argues its decision to grant primary residential custody to Mother based solely on S.W.'s wishes was unreasonable. He also argues that the district court committed several legal errors.

First, he contends that there was insufficient evidence to support a change in primary residential custody and instead, that the district court relied on speculation and

conjecture to support its ruling. Father also claims the district court erred by failing to consider all factors for assigning residential custody under K.S.A. 23-3203. Had the district court considered all the factors instead of solely S.W.'s wishes, Father maintains that S.W. would have remained in his residential care.

I. *We review the rules related to a change in custody.*

The residency of a minor child is to be determined in accordance with the child's best interests. K.S.A. 23-3201. The district court is in the best position to determine what is in a child's best interests. See *Cheney v. Poore*, 301 Kan. 120, 128, 339 P.3d 1220 (2014). The paramount question before the district court in a custody dispute is "which parent will do a better job of rearing the children and provide a better home environment." *In re Marriage of Whipp*, 265 Kan. 500, Syl. ¶ 1, 962 P.2d 1058 (1998).

A district court tasked with determining residency of a child is required to consider all relevant factors under K.S.A. 23-3203. The statute enumerates a long list of considerations a district court should evaluate such as each parent's involvement with the child; the desire of the parents as to residency; the desires of the child as to residency if they are of sufficient age and maturity; the interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests; the parties' employment location and schedule; and the child's adjustment to the home, school, and community, among others. K.S.A. 23-3203.

II. *Our standard of review is abuse of discretion.*

An appellate court will not reverse a district court's custody determination absent an abuse of discretion. *State, ex rel. Secretary, DCF v. M.R.B.*, 313 Kan. 855, 861-62, 491 P.3d 652 (2021). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on

6

an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

When reviewing a district court's custody determination for reasonableness, this court will not disturb a ruling even if reasonable persons could differ on the outcome so long as the district court made the decision within the appropriate legal standards. *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011). A district court abuses its discretion when its decision goes outside the applicable legal framework or fails to properly consider statutory limitations. 292 Kan. at 672.

Father claims that the district court's decision here was both unreasonable and outside the applicable legal framework. We will address each claim in order.

III.     *The district court's award of primary residential custody of S.W. to Mother was reasonable.*

Here, the district court began its ruling by stating that living primarily with Mother was in S.W.'s best interests. It explained that its role was not to look at what is fair to the parents but instead, "what's best for the child." The district court acknowledged that S.W. likely could not fully understand the consequences of her choice but ruled that she should be given the opportunity to live with Mother. Additionally, although the district court found both parents to be doing a capable job parenting S.W., it also expressed concern that forcing her to continue to live with Father after she expressed a desire to live with Mother could lead to resentment towards Father, depression, and other "emotional issues."

The district court then turned to the statute and referenced the factors listed in K.S.A. 23-3203 and noted that because both parties had already touched on the factors, the district court would not address each one. But it did specifically highlight that the court is to consider the desire of the child and whether the child is of sufficient age and maturity to express a preference. Based on S.W. being 14 years old, the district court ruled that her opinion about where she wanted to live "should [be] given some fairly significant weight." The district court also noted some of the potential challenges of changing S.W.'s primary residency, including that her routine with Mother during the school year would be different and that it was possible that S.W. might not like attending the much larger high school in Ohio. But ultimately, the district court ruled that S.W. should have a chance to live with Mother even if she eventually decided she did not like living in Ohio and wanted to return to Kansas to live with Father.

The district court repeatedly stated that it was making its residential custody determination based on the best interests of S.W. This complies with the district court's obligations under K.S.A. 23-3201 to "determine legal custody, residency and parenting time of a child in accordance with the best interests of the child." Furthermore, although another court might have ruled differently, there is evidence in the record that supports the district court's decision. This evidence includes S.W.'s stated preference for living with Mother, that S.W. has family and peers in Ohio to support her through the move, and that Father is often away from the home, leaving S.W. by herself.

Father argues that the district court could have only found that it was in S.W.'s best interests to live with Mother if it ruled that Father was deficient at parenting S.W. But this misstates the applicable legal standard. As stated, the district court needed to determine which living arrangement was in S.W.'s best interests. Awarding primary residential custody to one parent without a finding that the other parent is unfit is not an abuse of discretion so long as the decision is in the child's best interests. *Moudy v. Moudy*, 211 Kan. 213, 505 P.2d 764 (1973); see also *Harrison v. Tauheed*, 44 Kan. App.

8

2d 235, 260, 235 P.3d 547 (2010), *aff'd* 292 Kan. 663, 256 P.3d 851 (2011) (The district court did not abuse its discretion when it determined custody of the minor child after finding "'[b]oth parents are capable and loving parents.'").

We are reminded that

"[An appellate court's] function is not to delve into the record and engage in the emotional and analytical tug of war between two good parents over [their child]. The district court [is] in a better position to evaluate the complexities of the situation and to determine the best interests of the child[ ]. Unless we were to conclude that no reasonable judge would have reached the result reached below, the district court's decision must be affirmed." *In re Marriage of Bradley*, 258 Kan. 39, 45, 899 P.2d 471 (1995).

We find the district court's decision to grant Mother primary residential custody was reasonable. We turn next to Father's claim of legal error.

IV.   *The district court did not legally err in its decision to grant Mother primary residential custody of S.W.*

Father claims that the district court legally erred by granting Mother primary residential custody of S.W. for several reasons. First, he argues that the district court relied too heavily on speculation and conjecture when it considered S.W.'s preferred living arrangement. Second, he contends that if the district court had properly considered all the relevant statutory factors instead of solely S.W.'s preference, it would have awarded primarily residential custody of S.W. to Father. But the record does not support Father's claims.

From the bench, the district court properly noted that the factors listed in K.S.A. 23-3203 controlled the custody determination, while also acknowledging that Mother and Father had discussed many of those factors during the hearing. The district court

9

specifically discussed each parent's role and involvement with S.W. when it noted that both parents were doing a "good job." Furthermore, the district court explicitly ruled that S.W. was of a sufficient age and maturity level to express a desire regarding her primary residence. Logically, this also required the district court to consider S.W.'s age.

Implicitly, the district court naturally considered the desires of each parent when ruling whether to alter the custody arrangement. It also considered S.W.'s emotional needs when it noted that continuing to live with Father could create emotional issues for S.W. Further, the district court weighed S.W.'s adjustment to her new home, school, and community when it discussed S.W.'s schedule with Mother and the difference in school size between states when it ruled that S.W. would live with Mother through the summer to help her adjust to the move to Ohio. Finally, the district court weighed the willingness and ability of each parent to respect S.W.'s bond to the other parent and allow for a continuing relationship when the district court acknowledged that S.W. might not like living in Ohio and if so, should be able to return to living in Kansas with Father.

Although Father is correct in arguing that a court legally errs when it bases its ruling on speculation or conjecture, the district court's ruling in this case was grounded in evidence presented at the custody hearing. Although the district court did opine that S.W. might not actually enjoy living in Ohio, evidence gleaned through testimony, exhibits, and the district court's discussion with S.W. supports its findings. Therefore, Father's argument that the district court's ruling was too speculative fails.

Father's claim that the district court erred by failing to properly consider all the factors listed in K.S.A. 23-3203 also lacks support. He claims that the district court erred when it relied only on S.W.'s preference because a comprehensive review of all the statutory factors would have supported Father retaining his status as S.W.'s primary residential parent. But as Mother points out, Father did not object to the district court's

10

evaluation of the factors under K.S.A. 23-3203 when it granted Mother primary residential custody of S.W.

Generally, Supreme Court Rule 165 (2024 Kan. S. Ct. R. at 232) requires the district court to provide adequate findings of fact and conclusions of law on the record to support its decision. But a party must object to inadequate findings of fact and conclusions of law to preserve the issue for appeal. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 918, 416 P.3d 999 (2018). Such an objection gives the district court an opportunity to correct any alleged inadequacies. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013).

Here, the record is replete with examples of the district court evaluating certain considerations that would impact S.W.'s best interests. Because Father did not object to the district court's analysis, this court may generally presume that the district court found all facts necessary to support its judgment. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

But even if Father had properly objected to the ruling, the district court did not legally err in its findings to support the change in custody. As discussed, the district court considered more than S.W.'s preference when granting Mother primary residential custody of S.W. And although the district court did not explicitly consider every factor under K.S.A. 23-3203, its failure to do so was not legal error. See *In re Marriage of Ray & Fellers*, No. 121,011, 2020 WL 2502234, at *3 (Kan. App. 2020) (unpublished opinion). The statute does not require the district court to make specific findings on the record with respect to each factor. See *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 703, 229 P.3d 1187 (2010). Thus, the district court's legal findings to support its ruling for Mother were not erroneous.

In conclusion, the district court applied the proper legal framework in determining that living with Mother was in S.W.'s best interests; and its grant of primary residential custody of S.W. to Mother was reasonable. The record establishes that the district court properly considered the relevant statutory factors and did not overly speculate when granting primary residential custody to Mother. Additionally, Father waived his claim to argue that the district court's ruling was deficient by failing to object below to the district court's findings. Because the district court's ruling was reasonable and not the product of legal error, it did not abuse its discretion.

Affirmed.